IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | |
|---|---|
| **PATRICK HENRY MURPHY, JR.,** §<br>*Plaintiff,* §<br> §<br>v. §<br> §<br>**BRYAN COLLIER,** Executive Director, §<br>Texas Department of Criminal Justice, §<br>Huntsville, Texas §<br> § Civil No. 4:19-cv-01106<br>**LORIE DAVIS,** Director, Texas Department § **\*\*\*CAPITAL CASE\*\*\***<br>of Criminal Justice, Correctional Institutions §<br>Division, Huntsville, Texas §<br> §<br>**BILLY LEWIS,** Warden, Texas Department §<br>of Criminal Justice, Huntsville Unit, §<br>Huntsville, Texas §<br> §<br>*Defendants.* § | |

**COMPLAINT FILED PURSUANT TO 42 U.S.C. § 1983**

**Mr. Murphy is scheduled to be executed on March 28, 2019**.

David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
4604 Calhoun Rd.
Houston, TX  77204-6060
Tel. (713) 743-2171
Fax (713) 743-2131
Email ddow@central.uh.edu

Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4604 Calhoun Rd.
Houston, TX  77204-6060
Tel. (713) 743-6843
Fax (713) 743-2131
Email jrnewber@central.uh.edu

*Counsel Patrick Henry Murphy, Plaintiff*

i

# Table of Contents

Table of Authorities....................................................................................iii

Table of Exhibits……. ............................................................................ v

COMPLAINT FILED PURSUANT TO 42 U.S.C. § 1983 ....................... 1

I.    Jurisdiction… ................................................................................ 2

II.   Venue      …………. ...................................................................... 2

III.  Parties…………. .......................................................................... 2

IV.   Procedural background ................................................................. 3

V.    TDCJ's Policy violates the First Amendment's
      Establishment Clause because it is not neutral between
      religions…….. .............................................................................. 7

VI.   TDCJ's Policy unjustifiably interferes with Murphy's ability
      to practice his religion and therefore violates his First
      Amendment right to Free Exercise of religion. ............................ 15

VII.  If the Court believes TDCJ's policy does not interfere with
      Murphy's right pursuant to the Free Exercise Clause, it
      should nonetheless find the policy violates the RLUIPA............. 17

VIII. Prayer for Relief ......................................................................... 17

Verification…………. ............................................................................ 19

Certificate of Service .............................................................................. 20

# Table of Authorities

## Cases

*Burwell v. Hobby Lobby Stores,*
    573 U.S. 682 (2014) ................................................................ 17

*Cantwell v. Connecticut,*
    310 U.S. 296 (1940) ............................................................ 8, 15

*Church of the Lukumi Babalu Aye, Inc. v. Hialeah,*
    508 U.S. 520 (1993) ............................................................... 16

*Dunn v. Ray,*
    139 S. Ct. 661 (2019) .......................................................... 12-13

*Ex parte Alba,*
    256 S.W.3d 682 (Tex. Crim. App. 2008) ................................. 7

*Ex parte Chi,*
    256 S.W.3d 702 (Tex. Crim. App. 2008) ................................. 7

*Heck v. Humphrey,*
    512 U.S. 477 (1994) .................................................................. 7

*In re Murphy,*
    No. WR-63,549-02 (Tex. Crim. App. Mar. 25, 2019).................... 6-7

*Larson v. Valente,*
    456 U.S. 228 (1982) .................................................................. 8

*Masterpiece Cakeshop v. Colorado Civil Rights Commission,*
    138 S. Ct. 1719 (2018) ............................................................ 16

*Nelson v. Campbell,*
    541 U.S. 637 (2004) .................................................................. 7

*Ray v. Commissioner*,
    915 F.3d 689 (11th Cir. 2019) .................................................... 10-12

*State ex rel. Holmes v. Honorable Court of Appeals for the Third
    Dist.*, 885 S.W.2d 389 (Tex. Crim. App. 1994) ................................ 7

## Other Authorities

TDCJ, *Rehabilitation Programs Division, Chaplaincy Program*,
https://www.tdcj.texas.gov/divisions/rpd/chaplaincy.html ................. 5, 15

Tex. Crim. App. Misc. R. 11-0003 ............................................. 6

# Table of Exhibits

Exhibit 1        Counsel's February 28 email to Defendants' General
                 Counsel

Exhibit 2        General Counsel's March 5 email to Counsel

Exhibit 3        Counsel's March 7 email to Defendants' General
                 Counsel

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | |
|---|---|
| **PATRICK HENRY MURPHY, JR.,** *Plaintiff,* § § § | |
| v. § § § | |
| **BRYAN COLLIER,** Executive Director, Texas Department of Criminal Justice, Huntsville, Texas § § § | |
| § | Civil No.4:19-cv-01106 |
| **LORIE DAVIS,** Director, Texas Department of Criminal Justice, Correctional Institutions Division, Huntsville, Texas § § § § | **\*\*\*CAPITAL CASE\*\*\*** |
| **BILLY LEWIS,** Warden, Texas Department of Criminal Justice, Huntsville Unit, Huntsville, Texas § § § § | |
| *Defendants.* § | |

**COMPLAINT FILED PURSUANT TO 42 U.S.C. § 1983**

On March 28, 2019, Plaintiff Patrick Henry Murphy, Jr., a Pure Land Buddhist, will be executed under conditions that violate the First Amendment's Free Exercise and Establishment Clauses and substantially burden the exercise of his religious beliefs as protected by the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq. Mr. Murphy's request for a

1

reasonable accommodation to have a Buddhist spiritual advisor instead of a Christian chaplain in the execution chamber when he is executed has been denied. Mr. Murphy respectfully requests that this Court provide permanent injunctive relief ensuring that he is executed in a manner that does not substantially burden the exercise of his religious beliefs, does not violate his rights under the Establishment Clause, and complies with the RLUIPA.

## I.    Jurisdiction

This court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 1651, 2201, and 2202, and under 42 U.S.C. § 1983.

## II.   Venue

Venue is proper under 28 U.S.C. § 1391 because defendants Collier, Davis, and Jones maintain offices in Huntsville, Texas. Defendants are being sued in their official capacities. Venue is also proper because the execution will occur in this district.

## III.  Parties

Murphy is currently incarcerated under a sentence of death at the Polunsky Unit of the Texas Department of Criminal Justice in

Livingston, Texas. He is scheduled to be executed on March 28, 2019.

Bryan Collier is the executive director of the Texas Department of Criminal Justice. He is being sued in his official capacity.

Lorie Davis is the director of the Correctional Institutions Division of the Texas Department of Criminal Justice. She is being sued in her official capacity. Ms. Davis is the person charged by the trial court's order to execute the judgment of death against Murphy.

Billy Lewis is the senior warden of the Huntsville Unit, the unit at which TDCJ executes inmates. He is being sued in his official capacity. As the warden of the Huntsville Unit, Mr. Lewis is the TDCJ official that supervises Texas executions.

## IV.   Procedural background

On February 21, 2019, Murphy made known to Counsel his desire to have his spiritual advisor, Rev. Hui-Yong Shih, also known as Gerald Sharrock, present in the execution chamber when he is executed on March 28 instead of the TDCJ Christian chaplain who is ordinarily present in the execution chamber during executions. Murphy is an adherent of the branch of Buddhism known as Pure Land

3

Buddhism and has been for almost a decade. Accordingly, Murphy believes it is possible for him, after death, to be reborn in the Pure Land, a place where he could work towards enlightenment. Murphy explained his belief is that he can only achieve this outcome if he is able to focus on the Buddha at the time of his death and that the presence of his spiritual advisor, who has visited him in this capacity for the past six years, would permit him to maintain the required focus by reciting an appropriate chant (akin to a prayer).[1]

Accordingly, on February 28, 2019 – a full month before Murphy's scheduled execution – Counsel contacted Texas Department of Criminal Justice's ("TDCJ") General Counsel, Sharon Howell. Exhibit 1. Counsel informed Ms. Howell of Murphy's desire to have his spiritual advisor present in the execution chamber instead of the prison's Christian chaplain.

Ms. Howell replied to Counsel's email on March 5. Exhibit 2. Ms.

---

[1] Murphy also explained that his religious belief is that his body should not be disturbed for seven days after he is executed and that he had discussed this with his spiritual advisor. Based on his conversation with his spiritual advisor, Murphy asked Counsel to request that his body not be disturbed for seven minutes after his execution. TDCJ has agreed to this request.

4

Howell informed Counsel that Murphy could request the Christian chaplain not be present in the execution chamber but that Rev. Shih could not be in the chamber because TDCJ's policy is that only TDCJ employees can be present in the execution chamber during an execution.

Counsel replied to Ms. Howell on March 7. Exhibit 3. In light of TDCJ's policy, Counsel informed Ms. Howell that Murphy would be content to have any Buddhist priest who is a TDCJ employee in the execution chamber if such person exists. Ms. Howell has yet to reply to Counsel's March 7 email. Her decision not to reply appears to mean either that TDCJ employs no Buddhist priests or that it intends to deprive Mr. Murphy of his right to be accompanied by an advisor of his own faith for some other reason. In either case, it appears the choice for condemned prisoners, like Murphy, is to have a TDCJ-employed chaplain present in the execution chamber,[2] or to have no member of

---

[2] In addition to many Christian chaplains, TDCJ apparently employs five Muslim clerics as chaplains. TDCJ, *Rehabilitation Programs Division, Chaplaincy Program*, https://www.tdcj.texas.gov/divisions/rpd/chaplaincy.html. It does not appear TDCJ employs any chaplains of other faiths. *Id.* While TDCJ contracts with Native American and Jewish chaplains, it is not clear whether these individuals could accompany condemned men in the execution chamber. Moreover, it does not

the clergy present.

Even though his request had yet to be expressly denied, on March 20, 2019, Murphy sought relief in the state courts through a petition for a writ of prohibition filed in the Texas Court of Criminal Appeals ("CCA"). Counsel first filed in the state court to give the courts of Texas an opportunity to address Murphy's claims. Counsel filed this document without having ever learned from TDCJ that it had denied Murphy's request because under the CCA's rules, documents which asks that court to enjoin an imminent execution must be filed eight days before the scheduled execution unless good cause exists for filing on a later date. Tex. Crim. App. Misc. R. 11-003, *available at* http://www.txcourts.gov/media/208124/miscruleexecution.pdf.

On March 25, at 10:13 pm, the CCA denied Murphy leave to file his petition for writ of prohibition.[3] *In re Murphy*, No. WR-63,549-02 (Tex. Crim. App. Mar. 25, 2019). The Court held Murphy had not

---

appear TDCJ has entered into a similar contractual agreement with any Buddhist priest. *See id.*

[3] The Texas Rules of Appellate Procedure require a motion for leave to file accompany a petition for writ of prohibition. Tex. R. App. P. 72.1.

shown he had a clear right to relief or that there was no other adequate remedy at law. *Id.* As the concurring opinion from four of the CCA's nine judges makes clear, that court believes Murphy must raise his claim in  a complaint  pursuant to 42 U.S.C. § 1983, filed in the federal courts. *I*d. (Richardson, J., concurring).[4] Accordingly, after first attempting to give the state agency charged with carrying out the execution an opportunity to address this issue administratively and thereafter seeking relief in the state court, Murphy now files this Complaint pursuant to 42 U.S.C. § 1983.

## V.   TDCJ's policy violates the First Amendment's Establishment Clause because it is not neutral between religions.

The First Amendment of the United States Constitution commands that "Congress shall make no law respecting an

---

[4] Murphy could not raise his claim in a habeas application filed in the state courts because his claims do not challenge the legality of his conviction or sentence. *See Ex parte Chi*, 256 S.W.3d 702, 702-03 (Tex. Crim. App. 2008); *Ex parte Alba*, 256 S.W.3d 682, 685-87 (Tex. Crim. App. 2008). As this Court is aware, for the same reason, Murphy's claims could not be raised in a habeas petition in the federal courts. In the federal courts, a section 1983 is a proper vehicle by which to raise Murphy's claims. *See, e.g.*, *Nelson v. Campbell*, 541 U.S. 637, 644 (2004); *Heck v. Humphrey*, 512 U.S. 477, 487 & n.7 (1994). A section 1983 was not an available vehicle in state court because such documents are filed in the state's civil courts, and no state court but the CCA has the jurisdiction to grant Murphy the relief to which he would be entitled if successful, i.e., an injunction of his execution. *See State ex rel. Holmes v. Honorable Court of Appeals for the Third Dist.*, 885 S.W.2d 389, 395-96 (Tex. Crim. App. 1994).

7

establishment of religion." U.S. Const., amend. I. This command is similarly binding on the states. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). The Establishment Clause of the First Amendment prohibits governmental entities from passing laws that prefer one or more religions over others. *Larson v. Valente*, 456 U.S. 228, 246 (1982). By creating a policy that only employees can be present in the execution chamber, by subsequently employing only Christian and Muslim chaplains and not religious clerics of other religions, and by making part of its execution protocol that a TDCJ-employed chaplain or no chaplain will be present during executions, TDCJ has developed a procedure which demonstrates a clear preference for Christianity and Islam over other religions.

A law or policy that is not neutral between religions, like TDCJ's policy, is inherently suspect and strict scrutiny must be applied when determining whether the policy violates the First Amendment's Establishment Clause. *Larson*, 456 U.S. at 246. The policy can only survive this level of scrutiny only if it is narrowly tailored to a compelling interest. *Id.* at 247.

Presumably, TDCJ's policy of allowing only employees in the execution chamber during an execution was enacted, at least in part, to ensure the procedure is secure. Counsel acknowledged as much in his March 7 email to Ms. Howell. Exhibit 3. In Murphy's case, Counsel gave TDCJ ample time to insure there would be no security issues presented by a Buddhist priest accompanying Murphy during the execution. Rev. Shih is not someone who is unknown to TDCJ; he was approved to visit inmates as a spiritual advisor no less than six years ago and has visited Murphy on a regular basis in that capacity since that time. One month would have been more than sufficient for TDCJ to conduct whatever security screening measures it has employed with respect to the Christian and Muslim chaplain it employs.

Had Murphy waited until the week before his execution to make this request, it is possible TDCJ's interest in security purportedly served by its policy could be sufficient to survive strict scrutiny. This would be true if TDCJ could demonstrate there was not sufficient time to perform whatever security check it performs on the chaplains it employs. However, in a case where it was given a month to screen

9

either Murphy's spiritual advisor or another Buddhist priest, TDCJ's interest in security is not fitted closely enough to its policy for the policy to survive strict scrutiny.

The United States Court of Appeals for the Eleventh Circuit was recently presented a case almost identical to Murphy's. Domineque Ray had been a committed Muslim since at least 2006. *Ray v. Commissioner*, 915 F.3d 689, 692 (11th Cir. 2019). An imam began visiting him as a spiritual advisor in 2015. *Id.* On January 23, 2019 (fifteen days before he was scheduled to be executed), Ray asked that his imam be present in the execution chamber at the time of his execution instead of the Christian chaplain. *Id.* at 693. Both the warden of the unit and the unit's Christian chaplain informed Ray his imam could not be present in the chamber and that the Christian chaplain would be present despite Ray's request. *Id.* On January 28, Ray filed in the federal district court a complaint pursuant to section 1983 alleging the prison's policy infringed on his rights pursuant to the Establishment Clause and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *Id.* During district court proceedings, the State agreed to accommodate

10

Ray's request that the Christian chaplain not be present but reiterated his imam could not be present. *Id.* at 694. Under Alabama's policy no one who is not an employee of the state's department of corrections can be present at executions. *Id.* Because the Christian chaplain was the only religious cleric employed by the department, Ray's only choice was either to have the Christian chaplain present or to have no religious cleric present during his execution. Ray's counsel had argued that Alabama could pre-clear and pre-screen Ray's imam prior to his execution and that this should not be difficult as he had already been approved to serve as a spiritual advisor. *Id.* at 699. Alabama officials stated this was not possible but did not provide any explanation for that answer. *Id.* Nevertheless, the district court found Ray was not entitled to have his execution stayed because he had not shown there was a substantial likelihood he would succeed on the merits of his claims; furthermore, the district court faulted Ray for not making his request sooner. *Id.* at 694.

On appeal, the United States Court of Appeals for the Eleventh Circuit reversed the district court and stayed Ray's execution. The

Court found that Alabama's policy furthered a denominational preference. *Ray*, 915 F.3d at 697. The Court acknowledged "that Alabama has a powerful interest in the secure and orderly administration of the death penalty." *Id.* at 698. However, finding Alabama's bare assertion that it could not pre-clear Ray's imam before the execution insufficient to survive strict scrutiny, the court of appeals found there was a substantial likelihood Ray would succeed on his Establishment Clause claim and stayed his execution. *Id.* at 701, 703.

Alabama asked the Supreme Court of the United States to vacate the stay. In a 5-4 decision, the Court granted Alabama's motion, but did so only because Ray had waited until January 28 (ten days before his scheduled execution) to seek relief in the district court. *Dunn v. Ray*, 139 S. Ct. 661, 661 (2019). Ray had waited until January 23 to make his request that his imam be present, learned that day that his request was denied, and then waited an additional five days to seek redress from the courts. *Ray*, 915 F.3d at 692-93. Justice Kagan, writing for the four members of the Court who dissented from the decision to vacate the stay, wrote that Alabama's policy "goes against the Establishment

12

Clause's core principle of denominational neutrality," and found that the State's interest in security during the election was not sufficiently compelling to survive strict scrutiny when the State refused to explain why it would not be sufficient for Ray's imam to pledge he would "not interfere with the State's ability to perform the execution." *Ray*, 139 S. Ct. at 661-62 (Kagan, J., dissenting). There is nothing in the Court's ruling that suggests the five members who voted to vacate the stay disagreed with Justice Kagan's analysis except with respect to the issue regarding the timing of Ray's request for an accommodation.

TDCJ's policy is identical to Alabama's in all relevant aspects: a TDCJ-employed chaplain is present during executions unless the inmate requests otherwise; the department's policy is that only employees can be present during the execution; the department employs no religious clerics other than Christian and Muslim chaplains; and the effect of these things is that the inmate must choose to have either the Christian or Muslim chaplain or no spiritual advisor present during his execution.[5]

---

[5] That it appears a Texas inmate could to choose to have either a Muslim chaplain, Christian chaplain, or no chaplain accompany him during his execution while an Alabama

13

Just as Alabama did not provide any reason why Ray's imam could not be pre-cleared ahead of his execution, TDCJ has not offered any explanation regarding why it does not believe it cannot pre-clear Rev. Shih (or some other Buddhist minister) ahead of Murphy's execution.  (In fact, as indicated above, TDCJ has not even responded to Counsel's most recent communication attempting to resolve this matter.)

Murphy's case differs from Ray's in only two relevant respects. First, Murphy made his request to TDCJ an entire month before his scheduled execution. By doing so, Murphy gave TDCJ more than adequate time to address its interest in assuring his execution is secure. Second, Murphy began seeking relief in the state courts even before TDCJ expressly denied his request. (As explained in greater detail above, after giving TDCJ almost two weeks to respond to his question of whether TDCJ employs any Buddhist priests, Counsel, out of

---

inmate can apparently choose only between a Christian chaplain or no chaplain, makes the Texas execution protocol no less violative of the Establishment Clause than the Alabama protocol. Regardless of whether the number of preferred religions is one or two, when a policy shows preference for some religions over others, it runs afoul of the Establishment Clause.

abundance of caution, began seeking judicial relief even though the relevant administrative agency had yet to finally respond.)[6]

## VI.   TDCJ's policy unjustifiably interferes with Murphy's ability to practice his religion and therefore violates his First Amendment right to the Free Exercise of religion.

The First Amendment also commands that "Congress shall make no law … prohibiting the free exercise of" religion. U.S. Const., amend. I. Like the Establishment Clause, the Free Exercise Clause's command is binding on the states. *See Cantwell*, 310 U.S. at 303.

TDCJ's policy will prohibit Murphy's ability freely to exercise his religion. Specifically, it will prevent him from chanting with his spiritual advisor at the time of execution in an attempt to stay focused on the Buddha, as he believes is required if he is to enter the Pure Land after his execution. The level of scrutiny to be applied when reviewing policies that hinder an individual's ability freely to exercise his religion depends on whether the law is neutral and generally applicable. As

---

[6] Even in its response in opposition for Murphy's state court petition, TDCJ did not expressly answer whether it employs any Buddhist priests. TDCJ did, however, direct the CCA to its website which seems to indicate it employs only Christian and Muslim chaplains. *See* TDCJ, *Rehabilitation Programs Division, Chaplaincy Program*, https://www.tdcj.texas.gov/divisions/rpd/chaplaincy.html.

Justice Kennedy explained in *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993), "a law that is neutral and of general applicability need not be justified by a compelling government interest even if the law has the incidental effect of burdening a particular religious practice." *Lukumi Babalu Aye*, 508 U.S. at 531. A law that does not satisfy both of these requirements "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.*; *see also Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 138 S. Ct. 1719 (2018). TDCJ's policy is not neutral. Because Christian inmates are allowed to have a Christian chaplain accompany them during their executions, the policy does not prohibit a Christian inmate's ability freely to exercise his religion. The policy prohibits only non-Christian inmates from exercising their religion at the time of their execution. Accordingly, the policy is permissible only if it can survive strict scrutiny. As explained in greater detail above, the policy cannot survive strict scrutiny, at least not in cases like Murphy's where TDCJ has been given a month to take whatever measures are necessary to pre-clear a non-employee cleric.

16

## VII.  If the Court believes TDCJ's policy does not interfere with Murphy's rights pursuant to the Free Exercise Clause, it should nonetheless find the policy violates the RLUIPA.

"In RLUIPA, in an obvious effort to effect a complete separation from the First Amendment case law, Congress deleted the reference to the First Amendment and defined the 'exercise of religion' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 696 (2014) (quoting 42 U.S.C. § 2000cc-5(7)(A)). Accordingly, if the Court believes TDCJ's policy does not violate Murphy's rights pursuant to the Free Exercise Clause because Murphy's chanting with a Buddhist priest at the time of his death is not something he is compelled to do by his religion,[7] the Court should nevertheless find TDCJ's policy violates the RLUIPA.

## VIII. Prayer for relief

WHEREFORE, Plaintiff Patrick Henry Murphy prays that the Court provide relief as follows:

1.     Find that TDCJ's policy violates Murphy's rights under the

---

[7] Counsel believe the Court should find Murphy's religion does compel him to engage in this activity because this is what Murphy believes he needs to do to maintain the focus that is required for him to enter the Pure Land after he is executed.

First Amendment's Establishment and Free Exercise
Clauses.

2.      Find that TDCJ's policy violates the RLUIPA.

3.      Stay Murphy's execution until TDCJ is able to carry out the
        execution in accordance with the Constitution and federal
        law.

4.      Enter an Order prohibiting Defendants from executing
        Murphy until they can do so in a way that does not violate
        his rights.

Respectfully submitted,

/s/ David R. Dow
_____
David R. Dow
Texas Bar No. 06064900
Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4604 Calhoun Rd.
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (713) 743-2131

*Counsel for Patrick Henry Murphy*

## Verification

I, David R. Dow, attorney for Plaintiff in the above-entitled action, state that to the best of my knowledge and belief, the facts set forth in this Complaint are true.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 26, 2019.

/s/ David R. Dow

_____

David R. Dow

19

## Certificate of Service

I certify that on March 26, 2019 a true and correct copy of the above pleading was delivered via email to:

Gwen Vindell
Matthew Ottoway
Criminal Appeals Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Email: Gwendolyn.Vindell2@oag.texas.gov;
Matthew.Ottoway@oag.texas.gov

s/ Jeffrey R. Newberry
_____
Jeffrey R. Newberry