IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | |
|---|---|
| **PATRICK HENRY MURPHY, JR.,** *Plaintiff,* | § § § |
| v. | § § |
| **BRYAN COLLIER,** Executive Director, Texas Department of Criminal Justice, Huntsville, Texas | § § § § |
| | § Civil No. 4:19-cv-01106 |
| **LORIE DAVIS,** Director, Texas Department of Criminal Justice, Correctional Institutions Division, Huntsville, Texas | § **\*\*\*CAPITAL CASE\*\*\*** § § |
| | § |
| **BILLY LEWIS,** Warden, Texas Department of Criminal Justice, Huntsville Unit, Huntsville, Texas | § § § § |
| *Defendants.* | § |

**FIRST AMENDED COMPLAINT
FILED PURSUANT TO 42 U.S.C. § 1983**

David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
4604 Calhoun Rd.
Houston, TX  77204-6060
Tel. (713) 743-2171
Fax (713) 743-2131
Email ddow@central.uh.edu

Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4604 Calhoun Rd.
Houston, TX  77204-6060
Tel. (713) 743-6843
Fax (713) 743-2131
Email jrnewber@central.uh.edu

*Counsel for Patrick Henry Murphy, Plaintiff*

i

# Table of Contents

Table of Authorities ...................................................................................iii

Table of Exhibits…………................................................................... v

FIRST AMENDED COMPLAINT FILED PURSUANT TO 42
U.S.C. § 1983………………………………………………………… 1

I.      Jurisdiction…..................................................................... 4

II.     Venue………………… ....................................................... 4

III.    Parties……….. ................................................................... 5

IV.     Procedural background ................................................... 6

V.      TDCJ's policy violates the First Amendment's Establishment
        Clause because it is not neutral toward religion and, in its
        amended form, it evinces a hostility toward religion
        generally. …….. .......................................................... 11

VI.     TDCJ's Policy unjustifiably interferes with Murphy's ability
        to practice his religion and therefore violates his First
        Amendment right to Free Exercise of religion. ........... 15

VII.    If the Court believes TDCJ's policy does not interfere with
        Murphy's right pursuant to the Free Exercise Clause, it
        should nonetheless find the policy violates the RLUIPA. ............ 16

VIII.   Prayer for Relief.............................................................. 17

Verification…………. ....................................................................... 19

Certificate of Service...................................................................... 20

## Table of Authorities

**Cases**

*Burwell v. Hobby Lobby Stores,*
573 U.S. 682 (2014) ................................................................16-17

*Cantwell v. Connecticut,*
310 U.S. 296 (1940) ..........................................................11-12, 15

*Church of the Lukumi Babalu Aye, Inc. v. Hialeah,*
508 U.S. 520 (1993) ................................................................15-16

*Ex parte Alba,*
256 S.W.3d 682 (Tex. Crim. App. 2008) ...........................................9

*Ex parte Chi,*
256 S.W.3d 702 (Tex. Crim. App. 2008) ...........................................9

*Heck v. Humphrey,*
512 U.S. 477 (1994) ...........................................................................9

*Holt v. Hobbs,*
135 S. Ct. 853 (2015) .......................................................................17

*In re Murphy,*
No. WR-63,549-02 (Tex. Crim. App. Mar. 25, 2019) ........................9

*Larson v. Valente,*
456 U.S. 228 (1982) ...................................................................12, 13

*Lemon v. Kurtzman,*
403 U.S. 602 (1970) .........................................................................12

*Lynch v. Donnelly,*
465 U.S. 668 (1984) .........................................................................12

*Masterpiece Cakeshop v. Colo. Civil Rights Comm'n,*
   138 S. Ct. 1719 (2018) ...................................................................... 16

*Murphy v. Collier,*
   139 S. Ct. 1111 (2019) ...................................................................... 11

*Nelson v. Campbell,*
   541 U.S. 637 (2004) ............................................................................ 9

*State ex rel. Holmes v. Honorable Court of Appeals for the Third
   Dist.*, 885 S.W.2d 389 (Tex. Crim. App. 1994) ................................. 9

*Zorach v. Clauson,*
   343 U.S. 306 (1952) .......................................................................... 12

## Other Authorities

TDCJ, *Rehabilitation Programs Division, Chaplaincy Program*,
https://www.tdcj.texas.gov/divisions/rpd/chaplaincy.html ...................... 8

Tex. Crim. App. Misc. R. 11-0003 .............................................................. 8

Tex. R. App. P. 72.1 .................................................................................. 9

U.S. Const., amend. I .......................................................................... 11, 15

## Table of Exhibits

Exhibit 1        TDCJ, Correctional Institutions Division, Execution Procedure, April 2019

Exhibit 2        Counsel's February 28 email to TDCJ's General Counsel

Exhibit 3        TDCJ's Counsel's March 5 email to Counsel

Exhibit 4        Counsel's March 7 email to TDCJ's Counsel

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | |
|---|---|
| **PATRICK HENRY MURPHY, JR.,** §<br>*Plaintiff,* §<br> §<br>v. §<br> §<br>**BRYAN COLLIER,** Executive Director, §<br>Texas Department of Criminal Justice, §<br>Huntsville, Texas §<br> §<br>**LORIE DAVIS,** Director, Texas Department §<br>of Criminal Justice, Correctional Institutions §<br>Division, Huntsville, Texas §<br> §<br>**BILLY LEWIS,** Warden, Texas Department §<br>of Criminal Justice, Huntsville Unit, §<br>Huntsville, Texas §<br> §<br>*Defendants.* § | Civil No.4:19-cv-01106<br>**\*\*\*CAPITAL CASE\*\*\*** |

**FIRST AMENDED COMPLAINT
FILED PURSUANT TO 42 U.S.C. § 1983**

On February 28, 2019 – exactly one month before he was
scheduled to be executed – Plaintiff Patrick Henry Murphy, Jr., through
undersigned counsel, requested that his TDCJ-approved spiritual
advisor accompany him in the execution chamber. Defendants, through
counsel, denied Murphy's request and informed Counsel that only TDCJ

1

employees were allowed in the execution chamber, which would exclude Murphy's spiritual advisor. Murphy then, again through Counsel, inquired whether TDCJ employed any Buddhists reverends who could accompany him in the execution chamber. This inquiry went unanswered.

Though his request to have a TDCJ-employed Buddhist reverend accompany him (if any such person existed) had not yet been denied, Murphy, on March 20, raised in the state court claims that his execution would violate his rights under First Amendment's Free Exercise and Establishment Clauses if he was not permitted to have a Buddhist reverend accompany him during his execution. Despite the fact his complaint was arguably not ripe, due to the aforementioned failure of the State to respond to Murphy's most recent request for a spiritual advisor to be present in the execution chamber, Murphy nevertheless filed this action in order to comply with the State's rule requiring a stay of execution to be filed a week in advance of a scheduled execution. (The State defines "week," at least for purposes of this rule, as eight days, rather than seven.) Eight hours after he was

2

denied relief in the state court, Murphy filed his original Complaint in this Court, which raised three claims: 1) his execution would violate the First Amendment's Establishment Clause, 2) his execution would violate the First Amendment's Free Exercise Clause, and 3) his execution would substantially burden the exercise of his religious beliefs as protected by the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq. Accompanying his Complaint, Murphy filed a motion that asked this Court to stay his execution.

This Court denied Murphy's motion for a stay of execution, concluding Murphy's request for a religious accommodation to be untimely (despite that Murphy made his request a month in advance of his execution), and the Court of Appeals for the Fifth Circuit affirmed this Court's order, on the same basis. On the evening of the scheduled execution, the Supreme Court subsequently entered an order staying Murphy's execution pending the filing, consideration, and disposition of a timely filed petition for a writ of certiorari. (Justices Thomas and Gorsuch dissented; Justice Kavanaugh concurred, noting expressly

Murphy had timely raised his claim.)

On April 2, 2019, Defendants amended their execution procedures. A copy of the amended document is attached as Exhibit 1. Under the new version of the policy, no chaplains or spiritual advisors of any religion or denomination are permitted to accompany a condemned prisoner in the execution chamber. Defendants apparently adopted the amended policy in a naked attempt to render Plaintiff's claim pursuant to the Establishment Clause moot. Insofar as that was their objective, Defendants were (and are) mistaken; Murphy's execution pursuant to the amended protocol would still violate his rights pursuant to the Establishment Clause. Moreover, and in any event, his claims pursuant to the Free Exercise Clause and the RLUIPA are unaffected by Defendant's change in policy.

## I.  Jurisdiction

This court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 1651, 2201, and 2202, and under 42 U.S.C. § 1983.

## II.  Venue

Venue is proper under 28 U.S.C. § 1391 because defendants

Collier, Davis, and Jones maintain offices in Huntsville, Texas.
Defendants are being sued in their official capacities. Venue is also
proper because Plaintiff's execution will occur in this district.

## III.  Parties

Murphy is currently incarcerated under a sentence of death at the
Polunsky Unit of the Texas Department of Criminal Justice in
Livingston, Texas.

Bryan Collier is the executive director of the Texas Department of
Criminal Justice. He is being sued in his official capacity.

Lorie Davis is the director of the Correctional Institutions Division
of the Texas Department of Criminal Justice. She is being sued in her
official capacity. Ms. Davis is the person charged by the trial court's
order to execute the judgment of death against Murphy.

Billy Lewis is the senior warden of the Huntsville Unit, the unit at
which TDCJ executes inmates. He is being sued in his official capacity.
As the warden of the Huntsville Unit, Mr. Lewis is the TDCJ official
that supervises Texas executions.

## IV.   Procedural background

On February 21, 2019, Murphy made known to Counsel his desire to have his spiritual advisor, Rev. Hui-Yong Shih, also known as Gerald Sharrock, present in the execution chamber during his execution instead of the Huntsville Unit's Christian chaplain who is ordinarily present in the execution chamber during executions. Murphy is an adherent of the branch of Buddhism known as Pure Land Buddhism and has been for almost a decade. Accordingly, Murphy believes it is possible for him, after death, to be reborn in the Pure Land, a place where he could work towards enlightenment. Murphy explained his belief is that he can only achieve this outcome if he is able to focus on the Buddha at the time of his death and that the presence of his spiritual advisor, who has visited him in this capacity for the past six years, would permit him to maintain the required focus by reciting an appropriate chant (akin to a prayer).[1]

---

[1] Murphy also explained that his religious belief is that his body should not be disturbed for seven days after he is executed and that he had discussed this with his spiritual advisor. Based on his conversation with his spiritual advisor, Murphy asked Counsel to request that his body not be disturbed for seven minutes after his execution. TDCJ agreed to this request.

Accordingly, on February 28, 2019 – a full month before Murphy's scheduled execution – Counsel contacted Texas Department of Criminal Justice's General Counsel. Exhibit 2. Counsel informed TDCJ's Counsel of Murphy's desire to have his spiritual advisor present in the execution chamber instead of the prison's Christian chaplain.

TDCJ's Counsel replied to Counsel's email on March 5 and informed Counsel that Murphy could request the Christian chaplain not be present in the execution chamber but that Rev. Shih could not be in the chamber because TDCJ's policy is that only TDCJ employees can be present in the execution chamber during an execution. Exhibit 3.

Counsel replied to TDCJ's Counsel on March 7. Exhibit 4. In light of TDCJ's policy, Counsel informed TDCJ's Counsel that Murphy would be content to have any Buddhist reverend who is a TDCJ employee in the execution chamber if such person exists. TDCJ's Counsel did not reply to Counsel's March 7 email.

Counsel became concerned that TDCJ's Counsel decision not to

7

reply meant either that TDCJ employs no Buddhist reverends or that it intended to deprive Mr. Murphy of his right to be accompanied by an advisor of his own faith for some other reason. In either case, it appeared the choice for condemned prisoners, like Murphy, was to have a TDCJ-employed chaplain present in the execution chamber,[2] or to have no member of the clergy present.

Even though his request had yet to be expressly denied, on March 20, 2019, Murphy sought relief in the state courts through a petition for a writ of prohibition filed in the Texas Court of Criminal Appeals ("CCA"). (As indicated above, Counsel filed this arguably unripe action in order to comply with state law regarding timing for seeking stays of execution. Tex. Crim. App. Misc. R. 11-003, *available at* http://www.txcourts.gov/media/208124/miscruleexecution.pdf.) Counsel first filed in the state court to give the courts of Texas an opportunity

---

[2] In addition to many Christian chaplains, TDCJ apparently employs five Muslim clerics as chaplains. TDCJ, *Rehabilitation Programs Division, Chaplaincy Program*, https://www.tdcj.texas.gov/divisions/rpd/chaplaincy.html. It does not appear TDCJ employs any chaplains of other faiths. *Id.* While TDCJ contracts with Native American and Jewish chaplains, it is not clear whether these individuals could accompany condemned men in the execution chamber under the previous version of the policy. Moreover, it does not appear TDCJ has entered into a similar contractual agreement with any Buddhist priest. *See id.*

to address Murphy's claims.

On Monday March 25, at 10:13 pm, five days after Murphy sought relief, the CCA denied Murphy leave to file his petition for writ of prohibition.[3] *In re Murphy*, No. WR-63,549-02 (Tex. Crim. App. Mar. 25, 2019). The Court held Murphy had not shown he had a clear right to relief or that there was no other adequate remedy at law. *Id.* A concurring opinion from four of the CCA's nine judges made clear that the CCA believes Murphy must raise his claim in a complaint pursuant to 42 U.S.C. § 1983, filed in the federal courts. *Id.* (Richardson, J., concurring).[4] Accordingly, after first attempting to give the state agency charged with carrying out the execution an opportunity to

---

[3] The Texas Rules of Appellate Procedure require a motion for leave to file accompany a petition for writ of prohibition. Tex. R. App. P. 72.1.

[4] Murphy could not raise his claim in a habeas application filed in the state courts because his claims do not challenge the legality of his conviction or sentence. *See Ex parte Chi*, 256 S.W.3d 702, 702-03 (Tex. Crim. App. 2008); *Ex parte Alba*, 256 S.W.3d 682, 685-87 (Tex. Crim. App. 2008). As this Court is aware, for the same reason, Murphy's claims could not be raised in a habeas petition in the federal courts. In the federal courts, a section 1983 is a proper vehicle by which to raise Murphy's claims. *See, e.g.*, *Nelson v. Campbell*, 541 U.S. 637, 644 (2004); *Heck v. Humphrey*, 512 U.S. 477, 487 & n.7 (1994). A section 1983 was not an available vehicle in state court because such documents are filed in the state's civil courts, and no state court but the CCA has the jurisdiction to grant Murphy the relief to which he would be entitled if successful, i.e., an injunction of his execution. *See State ex rel. Holmes v. Honorable Court of Appeals for the Third Dist.*, 885 S.W.2d 389, 395-96 (Tex. Crim. App. 1994).

address this issue administratively and thereafter seeking relief in the

state court, Murphy filed his original Complaint pursuant to 42 U.S.C.

§ 1983 in this Court the following morning.

This Court denied Murphy's motion for a stay of execution, finding

his Complaint could have been filed on an earlier date. ECF No. 9 at

11. The Court's order denying Murphy a stay of his execution did not

address the substance of Murphy's Complaint, nor that the prison had

yet to respond to his March 7 request. *Id.* On appeal, the Court of

Appeals for the Fifth Circuit, also citing this Court's (and the CCA's)

view regarding timing, found that this Court did not abuse its

discretion in denying Murphy a stay of execution.

Counsel then sought relief from the Supreme Court through two

documents. The first, a Petition for a Writ of Prohibition, remains

pending and is scheduled to be conferenced on April 26. The second

document Counsel filed in the Supreme Court on behalf of Murphy was

a Motion for Stay of Execution Pending the Filing, Consideration, and

Disposition of Petition for Writ of Certiorari. The Court granted that

motion and ordered that the State could not execute Murphy "pending

10

the timely filing and disposition of a petition for a writ of certiorari unless the State permits Murphy's Buddhist spiritual advisor or another Buddhist reverend of the State's choosing to accompany Murphy in the execution chamber." *Murphy v. Collier*, 139 S. Ct. 1111, 1111 (2019). Murphy's petition for writ of certiorari is due in the Supreme Court on June 25, and Counsel intend to file the petition by that date.

On April 2, apparently in response to the Supreme Court's order (specifically, to a concurring statement signed only by Justice Kavanaugh), TDCJ adopted a new execution procedure, under which no chaplains or spiritual advisors are permitted in the execution chamber during an execution.

## V.   TDCJ's policy violates the First Amendment's Establishment Clause because it is not neutral toward religion and, in its amended form, it evinces a hostility toward religion generally.

The First Amendment of the United States Constitution commands that "Congress shall make no law respecting an establishment of religion." U.S. Const., amend. I. This command is similarly binding on the states. *See Cantwell v. Connecticut*, 310 U.S.

296, 303 (1940). The Establishment Clause of the First Amendment prohibits governmental entities from passing laws that demonstrate a hostility toward religion or that prefer one or more religions over others. *Larson v. Valente*, 456 U.S. 228, 246 (1982); *Zorach v. Clauson*, 343 U.S. 306, 313-15 (1952).

Defendants' amended policy might appear, at first blush, to be neutral, but it is not. In the first place, the Establishment Clause requires not only that the State be neutral among religions, it also requires the State be neutral between religion and non-religion. *See, e.g.*, *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1970); *Lynch v. Donnelly*, 465 U.S. 668, 698 (1984). Second, despite its facial neutrality as among religions, by precluding all chaplains and spiritual advisors from having access to the execution chamber, the amended policy continues to prefer certain religions over others by giving Christian (and perhaps also Muslim) inmates  greater access to religious clerics of their faith during the time immediately preceding their executions.

Under the new policy, after being transported to the Huntsville Unit, a condemned prisoner can have visits with a TDCJ Chaplain, a

12

minister or spiritual advisor who has the appropriate credentials, and his attorney. Exhibit 1 at 7. Attorney visits and visits with approved ministers and spiritual advisors can only happen between 3:00 and 4:00 pm. Exhibit 1 at 8. There is no such restriction on visits with a TDCJ chaplain, who appears to have access to an inmate until the minute he enters the execution chamber. *See* Exhibit 1. Because TDCJ employs only Christian and Muslim clerics as chaplains, this policy favors Christian and Muslim inmates.

A law or policy that is not neutral between religion and non-religion or among various religions, like TDCJ's policy, is inherently suspect, and strict scrutiny must be applied when determining whether the policy violates the First Amendment's Establishment Clause. *Larson*, 456 U.S. at 246. The policy can only survive this level of scrutiny only if it is narrowly tailored to a compelling interest. *Id.* at 247. It is unclear what interest TDCJ believes this discriminatory policy serves.

Moreover, Defendants' decision to prohibit all chaplains and spiritual advisors from the execution chamber in response to the

Supreme Court's order evinces a hostility toward religion generally. According to the Defendants, TDCJ's policy of allowing only employees in the execution chamber during an execution was enacted to ensure the procedure is secure. Defendants have, under the previous policy, followed some procedure through which they were able to be confident the chaplains approved to be present in the execution chamber were not a security threat. That same process could have been used to clear spiritual advisors of other faiths. Doing so would have required Defendants to do no more than they were previously already doing to clear TDCJ-employed chaplains. However, rather than allowing spiritual advisors of other faiths to be present in the execution chamber, Defendants have enacted a new policy that is hostile to religion generally. By denying all religious inmates access to a spiritual advisor at the time they are dying and when many believe they will be entering some form of an afterlife, TDCJ's policy favors non-religious inmates.

## VI.   TDCJ's policy unjustifiably interferes with Murphy's ability to practice his religion and therefore violates his First Amendment right to the Free Exercise of religion.

The First Amendment also commands that "Congress shall make no law … prohibiting the free exercise of" religion. U.S. Const., amend. I. Like the Establishment Clause, the Free Exercise Clause's command is binding on the states. *See Cantwell*, 310 U.S. at 303.

TDCJ's policy will prohibit Murphy's ability freely to exercise his religion. Specifically, it will prevent him from chanting with his spiritual advisor at the time of execution in an attempt to stay focused on the Buddha, as he believes is required if he is to enter the Pure Land after his execution. The level of scrutiny to be applied when reviewing policies that hinder an individual's ability freely to exercise his religion depends on whether the law is neutral and generally applicable. As Justice Kennedy explained in *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993), "a law that is neutral and of general applicability need not be justified by a compelling government interest even if the law has the incidental effect of burdening a particular religious practice." *Lukumi Babalu Aye*, 508 U.S. at 531. A law that

15

does not satisfy both of these requirements "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.*; *see also Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1734 (2018) (Gorsuch, J., concurring). TDCJ's policy is not neutral because it evinces a hostility toward religion and thereby favors non-religious inmates over religious inmates. Accordingly, the policy is permissible only if it can survive strict scrutiny. The policy cannot survive strict scrutiny, at least not in cases like Murphy's where TDCJ is given ample time to take whatever measures are necessary to pre-clear a spiritual advisor using the same process it used to pre-clear TDCJ employed chaplains to be present in the execution chamber under the previous version of the policy.

## VII. If the Court believes TDCJ's policy does not interfere with Murphy's rights pursuant to the Free Exercise Clause, it should nonetheless find the policy violates the RLUIPA.

"In RLUIPA, in an obvious effort to effect a complete separation from the First Amendment case law, Congress deleted the reference to the First Amendment and defined the 'exercise of religion' to include 'any exercise of religion, whether or not compelled by, or central to, a

system of religious belief.'" *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 696 (2014) (quoting 42 U.S.C. § 2000cc-5(7)(A)). Accordingly, if the Court believes TDCJ's policy does not violate Murphy's rights pursuant to the Free Exercise Clause because Murphy's chanting with a Buddhist priest at the time of his death is not something he is compelled to do by his religion,[5] the Court should nevertheless find TDCJ's policy violates the RLUIPA. Prohibiting Murphy from being guided at the time of death by a Buddhist reverend is an explicit and substantial burden on religious exercise. *See, e.g.*, *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (where prisoner shows exercise of religion "grounded in a sincerely held religious belief," enforced prohibition "substantially burdens his religious exercise").

## VIII. Prayer for relief

WHEREFORE, Plaintiff Patrick Henry Murphy prays that the Court provide relief as follows:

1. Find that TDCJ's policy violates Murphy's rights under the First Amendment's Establishment and Free Exercise

---

[5] Counsel believe the Court should find Murphy's religion does compel him to engage in this activity because this is what Murphy believes he needs to do to maintain the focus that is required for him to enter the Pure Land after he is executed.

Clauses.

2.     Find that TDCJ's policy violates the RLUIPA.

3.     Enter an Order prohibiting Defendants from executing
       Murphy until they can do so in a way that does not violate
       his rights.

Respectfully submitted,

/s/ David R. Dow

_____

David R. Dow
Texas Bar No. 06064900
Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4604 Calhoun Rd.
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (713) 743-2131

*Counsel for Patrick Henry Murphy*

## Verification

I, David R. Dow, attorney for Plaintiff in the above-entitled action, state that to the best of my knowledge and belief, the facts set forth in this Complaint are true.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 18, 2019.

/s/ David R. Dow
_____

David R. Dow

19

## Certificate of Service

I certify that on April 18, 2019 a notice of electronic filing was delivered to Counsel for Defendants by the Court's Case Management/Electronic Case Filing system.

Amy L. Hunsucker Prasad
amy.prasad@oag.texas.gov
Leah Jean O'Leary
leah.oleary@oag.texas.gov
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

s/ Jeffrey R. Newberry
_____
Jeffrey R. Newberry

20