```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                          HOUSTON DIVISION

 3

 4   PATRICK HENRY MURPHY, JR.,    .  4:19-CV-01106
                                   .  HOUSTON, TEXAS
 5        PLAINTIFF,               .  APRIL 18, 2019
     VS.                           .  2:00 P.M.
 6                                 .
     TDCJ EXECUTIVE DIRECTOR       .
 7   BRYAN COLLIER, ET AL,         .
                                   .
 8        DEFENDANTS.              .
     ...............................
 9

10          TRANSCRIPT OF INITIAL PRETRIAL CONFERENCE
                BEFORE THE HONORABLE SIM LAKE
11                UNITED STATES DISTRICT JUDGE

12

13

14                         *APPEARANCES*

15

16
     FOR THE PLAINTIFF:
17
         Jeffrey R. Newberry
18       UNIVERSITY OF HOUSTON LAW CENTER
         4604 Calhoun Road
19       Houston, Texas  77204-6060

20

21   FOR THE DEFENDANTS:

22       Leah Jean O'Leary
         Amy H. Prasad
23       Matthew D. Ottoway
         OFFICE OF THE ATTORNEY GENERAL OF TEXAS
24       Post Office Box 12548
         Austin, Texas  78711
25
```

1                          *APPEARANCES - CONTINUED*

4    OFFICIAL COURT REPORTER:

5        Mayra Malone, CSR, RMR, CRR
         U.S. Courthouse
6        515 Rusk
         Room 8004
7        Houston, Texas   77002
         713-250-5787

10   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.

## PROCEEDINGS

THE COURT: We are here this afternoon for the scheduling conference in Civil Action H-19-1106, Patrick Henry Murphy, Jr., versus the Texas Department of Criminal Justice and Bryan Collier.

Beginning with plaintiff's counsel, will counsel please identify themselves for the Court?

MR. NEWBERRY: I'm Jeff Newberry for Patrick Henry Murphy.

MS. O'LEARY: Your Honor, I'm Leah O'Leary for the defendant, and I also have Amy Prasad and Matt Ottoway. We are from the Attorney General's office.

THE COURT: Thank you. I assume everybody has read the first amended complaint. I have a question about a statement that appears in page 13. So turn to that page, please.

The second line says, "Attorney visits and visits with approved ministers and spiritual advisors can only happen between 3:00 and 4:00 p.m. There is no such restriction on visits with the TDCJ chaplain, who appears to have access to an inmate until the minute he enters the execution chamber. See Exhibit 1. Because TDCJ employs only Christian and Muslim clerics as chaplains, this policy favors Christian and Muslim inmates."

First of all, let me ask plaintiff's counsel,

| | | |
|---|---|---|
| 14:01 | 1 | where is the reference on page 8 to that?  Is it paragraph 5C? |
| | 2 | Is that correct? |
| | 3 |     MR. NEWBERRY:  Yes, Judge Lake.  5C is correct. |
| | 4 |     THE COURT:  And there is language on paragraph 3-12, |
| 14:02 | 5 | the previous page, "The offender may have visits with a TDCJ |
| | 6 | chaplain or a minister/spiritual advisor who has the |
| | 7 | appropriate credentials and his attorneys on the day of |
| | 8 | execution." |
| | 9 |     Let me ask defense counsel, is this a correct |
| 14:02 | 10 | statement on page 13?  In other words, can an inmate -- can a |
| | 11 | TDCJ chaplain visit with the inmate after 4:00 p.m.?  I guess |
| | 12 | that's the precise question. |
| | 13 |     MS. O'LEARY:  Your Honor, our understanding is that |
| | 14 | the chaplain visits, including with TDCJ chaplains, happen |
| 14:02 | 15 | between 3:00 and 4:00.  From 4:00 until the time of the |
| | 16 | execution, other procedures are happening, such as the policy |
| | 17 | talks about.  There are showers.  There is a meal, things like |
| | 18 | that.  And so certainly I'm not prepared to point you to |
| | 19 | evidence yet, but that's our understanding.  And that is |
| 14:03 | 20 | certainly something -- |
| | 21 |     THE COURT:  Where do you get the idea that there is no |
| | 22 | restriction by TDCJ chaplains after 4:00 p.m.? |
| | 23 |     MR. NEWBERRY:  Judge Lake, I believe if there was that |
| | 24 | restriction, it would be expressed in paragraph 5C.  Let me |
| 14:03 | 25 | point out, "a minister/spiritual advisor and attorney visits." |

| | | |
|---|---|---|
| 14:03 | 1 | And I don't think that they would combine TDCJ chaplain and |
| | 2 | minister/spiritual advisor to the same category when they were |
| | 3 | careful on the previous page, 3-12, to list those as three |
| | 4 | separate categories. But it is just the absence of the TDCJ |
| 14:03 | 5 | language in 5C that they were basing that on. |
| | 6 | MS. O'LEARY: Your Honor, I will also point you to the |
| | 7 | exception in that same provision that says the warden can grant |
| | 8 | exceptions to the 4:00 restriction. And we are not aware of |
| | 9 | any requests by Mr. Murphy for an exception, which is permitted |
| 14:04 | 10 | under that policy. |
| | 11 | THE COURT: The second question is: It talks about |
| | 12 | TDCJ chaplains and a minister/spiritual advisor has the |
| | 13 | appropriate credentials. That implies that spiritual advisors, |
| | 14 | such as the one requested by Mr. Murphy, could be approved for |
| 14:04 | 15 | visits at the same time as the TDCJ chaplain, if they had the |
| | 16 | appropriate credentials. So is that correct? |
| | 17 | MS. O'LEARY: That is correct, Your Honor. And |
| | 18 | credentials just refers to they have gone through the steps to |
| | 19 | be approved to enter onto the unit and things like that. |
| 14:04 | 20 | THE COURT: So what Mr. Murphy has identified as |
| | 21 | spiritual advisor who he wanted to be present with him, could |
| | 22 | that person apply and receive credentials to be with |
| | 23 | Mr. Murphy? |
| | 24 | MS. O'LEARY: Not inside the execution chamber. |
| 14:04 | 25 | THE COURT: I understand that. Under the current |

14:04 1 policy, nobody can be in the execution chamber.  I'm dealing
2 with the equal protection claim now.  Could that person apply
3 for credentials?
4 　　　　　　　MS. O'LEARY:  Yes.  And my understanding, based on the
14:05 5 pleadings, is that Mr. Murphy's spiritual advisor already has
6 the credentials to enter the unit and has been visiting with
7 Mr. Murphy on the prison facility.
8 　　　　　　　THE COURT:  Well, why wasn't he allowed in the
9 execution chamber on the date of Mr. Murphy's scheduled
14:05 10 execution constitution?
11 　　　　　　　MS. O'LEARY:  Well, of course, the execution was
12 stayed, so we didn't check that far.  But the request was
13 denied because the current policy at that time said that only
14 TDCJ employees are allowed in the execution chamber.  And
14:05 15 that's because the credentials just to visit an offender on a
16 prison facility are not as sensitive and probably not as deeply
17 investigated as someone who is actually standing in reaching
18 proximity to someone who is being executed in the same room.
19 So just because a spiritual advisor has been approved to enter
14:06 20 onto a TDCJ facility to meet with an offender, that is not the
21 same as a limitation that only TDCJ employees can be in the
22 execution chamber.
23 　　　　　　　THE COURT:  So with respect to the equal protection
24 argument, if Mr. Murphy's spirit advisor could be credentialed
14:06 25 to have the same access to Mr. Murphy that any other approved


14:06  1  chaplain would have, why do you still have an equal protection
       2  claim?
       3              MR. NEWBERRY:  Because absent evidence pointing --
       4  proving differently, I believe that the TDCJ chaplain does have
14:06  5  more access than a minister/spiritual advisor with approved
       6  credentials.
       7              And it is correct that Reverend Shih's
       8  credentials have been approved.  I believe he was allowed to
       9  visit Mr. Murphy during this 3:00 to 4:00 window, but his visit
14:06 10  had to end there.  And absent evidence to the contrary, I
      11  believe even under the current policy, a TDCJ chaplain, which
      12  would only be a Christian chaplain or a Muslim chaplain, could
      13  have access beyond that.
      14              THE COURT:  Well, if what the state tells me the
14:07 15  policy provides, then I don't see that you have an equal
      16  protection argument, but we will have to just see what the
      17  discovery reflects on that.
      18              The question about being in the chamber, the
      19  execution chamber rises to a different level, because the
14:07 20  state -- even in Justice Kavanaugh's concurring opinion, he
      21  said, "A state may choose a remedy which would allow religious
      22  advisors only in the waiting room, and not the execution room,
      23  because there are operational and security issues associated
      24  with execution by lethal injection."
14:07 25              If you have constitutional and statutory claims

14:07  1  dealing with Mr. Murphy's desire to have his advisor in the
       2  room to assist him in praying at the time of his execution,
       3  that's an issue that will have to be addressed under the
       4  merits.  You have got two claims.  You have got equal
14:08  5  protection, which you will have to prove satisfies my concerns
       6  about that, and you have got this other claim.
       7              When the state revised its policies, did you
       8  check to see what other states allowed with respect to the
       9  access by spiritual advisors into the execution chamber?
14:08 10          MS. O'LEARY:  I know that there is a consideration of
      11  what Alabama does in their state, but I'm not aware of a
      12  further study of what other states do.
      13          THE COURT:  Are you aware of any law that says under
      14  the First Amendment, or under the statute, an inmate has a
14:08 15  right to have a spiritual advisor in the execution chamber
      16  immediately preceding his execution?
      17          MR. NEWBERRY:  I'm not aware of a law, a First
      18  Amendment provision or a statute that says expressly that;
      19  however, especially the statute, the Religious Land Use and
14:09 20  Institutionalized Persons Act, if it is something that is
      21  important to his religion, a sincerely held belief, there has
      22  to be a compelling reason to stop him from engaging in that.
      23          THE COURT:  Well, Justice Kavanaugh appears to
      24  foreshadow the Court's opinion that there might be a compelling
14:09 25  reason.

14:09    1              All right.  I have some questions about the
         2   proposed discovery plan that you submitted.
         3              You refer in paragraph 2 to two cases.  18A985 is
         4   the Supreme Court's denial of stay.  Is that case still
14:10    5   pending?
         6              MR. NEWBERRY:  It is.  They granted the stay.  It was
         7   pending the timely filed consideration and disposition of a
         8   cert petition.  Our petition for certiorari is currently due
         9   June 25.  We don't anticipate asking for any extension, but it
14:10   10   is --
        11              THE COURT:  What are you going to seek cert from?
        12              MR. NEWBERRY:  The Fifth Circuit opinion.
        13              THE COURT:  They granted the stay.  Isn't that moot?
        14              MR. NEWBERRY:  No, Judge Lake, it's not.  Because the
14:10   15   stay was pending the filing, consideration and disposition of a
        16   cert petition.
        17              THE COURT:  It seems to me it will be moot, but we
        18   will worry about that later.
        19              What about 18-8615, where is that case pending?
14:10   20              MR. NEWBERRY:  That is also the Supreme Court.  It's a
        21   petition for writ of prohibition that we filed at the same
        22   time.  That's scheduled to be conferenced on the 26th, I
        23   believe.  That exact -- if I'm missing that date, it's in our
        24   first amended complaint, but I believe it is April 26th at that
14:11   25   scheduling conference.

| | | |
|---|---|---|
| 14:11 | 1 | THE COURT: Okay. Do you intend to amend or add any |
| | 2 | additional parties? You have got a very short proposed |
| | 3 | schedule. If I have to bring in new parties or allow |
| | 4 | amendments, that could delay further discovery. |
| 14:11 | 5 | MR. NEWBERRY: We do not anticipate adding -- we have |
| | 6 | no plans to add additional parties, and the only reason we |
| | 7 | needed to do this amendment today was to adjust to the new |
| | 8 | policy. We have no plans -- |
| | 9 | THE COURT: Then under Court's schedule, there will be |
| 14:11 | 10 | none without prior approval of the Court. |
| | 11 | Now, you indicate as to the schedule that you can |
| | 12 | complete discovery by June 28th. That's 70 days from today. |
| | 13 | And you anticipate sending out at least interrogatories. |
| | 14 | I have a question to plaintiff's counsel about |
| 14:11 | 15 | page 5, subparagraph D: Depending on the answers he receives |
| | 16 | from the interrogatories, the plaintiff anticipates he may send |
| | 17 | interrogatories to Collier, Davis, Lewis, et cetera. |
| | 18 | You mean take depositions or do you just mean |
| | 19 | further interrogatories? |
| 14:12 | 20 | MR. NEWBERRY: Judge Lake, it depends on the answers |
| | 21 | to interrogatories. I think it is very likely that our further |
| | 22 | questions could be satisfied with further interrogatories. |
| | 23 | THE COURT: Because you understand I'm talking |
| | 24 | about -- 70 days doesn't allow much time. |
| 14:12 | 25 | MR. NEWBERRY: Yes, Judge Lake. |

```
14:12    1            THE COURT:  All right.  Does the state have a problem
         2   with 70 days for discovery?
         3            MS. O'LEARY:  Your Honor, we are willing to put in the
         4   resources to expedite this scheduling order.  However, if I
14:12    5   may, I would like to raise one issue.  I think that it would be
         6   beneficial for us to resolve the issue of exhaustion before we
         7   dive into all of this discovery.
         8            THE COURT:  No.  We are not going to do that.  We are
         9   going to move forward.
14:13   10            MS. O'LEARY:  Okay.
        11            THE COURT:  We are going to move forward.  There will
        12   be no 12(b)(6) motions.  There will be a summary judgment
        13   motion by each side, a Rule 56 motion.  We are going to move
        14   this case through as quickly as we can, given the interests
14:13   15   involved.  We are not going to have a threshold exhaustion
        16   argument.
        17            Do you anticipate an expert witness?  You say no.
        18            MR. NEWBERRY:  That's correct.  We don't anticipate --
        19            THE COURT:  There will be no experts.
14:13   20            The discovery cutoff will be June 28th.
        21   Dispositive motions will be due July 19th.  Each side is
        22   limited to one dispositive motion, not to exceed 25 pages of
        23   argument.
        24            Now, I have some other questions.  Are there any
14:14   25   objections other than what the state has already mentioned as
```

14:14    1   to the schedule?
         2           MR. NEWBERRY:  We have no objections.
         3           MS. O'LEARY:  No, Your Honor.
         4           THE COURT:  All right.  I have a question for the
14:14    5   state.  We have already talked about the equal protection
         6   issue.  You have avoided the First Amendment and statutory
         7   claims with a policy -- this is a suggested policy.
         8           What about a policy that allows an inmate who is
         9   scheduled for execution to advise the state no later than 30
14:14   10   days before his scheduled execution whether he wishes a
        11   spiritual advisor to be with him in the execution chamber?  And
        12   if so, to identify either the preferred advisor or the religion
        13   of the advisor whom he wishes?
        14           The state probably has already approved Christian
14:15   15   and Muslim chaplains, and the state could also approve other
        16   advisors from major religions, such as Buddhism, and could
        17   approve advisors' requests 30 days before the execution, which
        18   would moot this issue.  And this would avoid any last-minute
        19   requests.  And if the plaintiff's request for a spiritual
14:15   20   advisor raised legitimate security concerns -- for example,
        21   five years ago, if the plaintiff had requested Osama Bin Ladin
        22   as his advisor, or some person who appeared beyond the pale of
        23   a legitimate religious advisor, the state could probably deny
        24   the request.  But if the request appeared to be valid, you
14:16   25   could grant the request, allow the advisor to be in the chamber

14:16  1  and moot this case.
       2           What about that?
       3           MS. O'LEARY: Respectfully, Your Honor, the state is
       4  taking the position that allowing non-TDCJ employees in the
14:16  5  execution chamber would severely compromise the security of the
       6  procedure, and we believe that we will meet our threshold
       7  burden of proving a compelling interest to satisfy the
       8  religious standard.
       9           And if I may, just to clarify, TDCJ did not
14:16 10  specifically approve Christian and Muslim chaplains to be in
      11  the chamber. They approved TDCJ employees to be in the chamber
      12  who were hired as chaplains. The chaplains are not hired to
      13  specifically cater to one religion or another. And so I just
      14  wanted to clarify that characterization, although that is how
14:16 15  it is characterized in the plaintiff's pleadings.
      16           THE COURT: But right now, no religious advisor, even
      17  a TDCJ chaplain, can be in the execution chamber?
      18           MS. O'LEARY: That's right. Under the new policy, we
      19  have removed chaplain from the list of people who are allowed
14:17 20  in the execution chamber.
      21           THE COURT: Okay. All right. Those are my questions.
      22           If anybody else has any concerns or observations,
      23  I will be glad to hear them, beginning with plaintiff's
      24  counsel.
14:17 25           MR. NEWBERRY: I have none, Judge Lake.

14:17    1             MS. O'LEARY:  Your Honor, I think just with regard to
         2   discovery, I anticipate that there is going to be a lot of
         3   contested issues throughout discovery, because information
         4   pertaining to executions is very sensitive and it is obviously
14:17    5   a political issue.  As we saw in the recent Supreme Court case
         6   in Levin, it can implicate physical threats and things like
         7   that.  And so the information related to executions is -- it's
         8   guarded.
         9             THE COURT:  Let me ask plaintiff's counsel.  You want
14:18   10   a list of everyone who has been in the execution chamber since
        11   December 7, 1982.  That's 36 years.  That does seem somewhat
        12   excessive.  Can you justify that date?
        13             MR. NEWBERRY:  That's just the first time -- that's
        14   the date of the first execution after moratorium.  I don't
14:18   15   think -- it is our belief, Judge Lake, that that list is not
        16   going to be extremely long.  Normally the people that are there
        17   in the execution chamber are the correctional institution
        18   division head, which is currently Ms. Lorie Davis, the
        19   Huntsville Unit Warden, and I believe the TDCJ chaplain, who
14:18   20   usually, I believe -- and, of course, it is not in their
        21   current policy, but I believe usually it was the Huntsville
        22   Unit Chaplain.  So I don't think this list of people is going
        23   to be particularly long, even though it does cover many
        24   executions.
14:19   25             The reason that is important to us is that the

```
14:19    1   affidavit from Defendant Davis that was filed in their response
         2   to our complaint said that the reason it can only be TDCJ
         3   employees that are there in the execution chamber is she has to
         4   have known them for many years.  They have to have shown years
14:19    5   of devoted service, I believe is the phraseology there in the
         6   affidavit.  And so that information, along with how long they
         7   worked at TDCJ or for TDCJ at that time, is relevant, because
         8   we need to see how long these people were employed there;
         9   whether or not it is true that only people that have shown
14:19   10   years of devoted service are in the execution chamber.
        11           MS. O'LEARY:  Sorry.  Some of the identities of people
        12   involved in executions will be statutorily confidential.
        13           THE COURT:  You can enter a protective order.  That's
        14   not a problem, given the quality of the lawyers.  I don't doubt
14:20   15   that you can enter a protective order.  There is a proposed
        16   protective order on the Court's website which you can easily
        17   either agree to or revise in a couple days.
        18           I am concerned that you are not going to initiate
        19   written discovery until 30 days.  That seems like an
14:20   20   excessive -- why can't you do it in 15 days?
        21           MS. O'LEARY:  To begin discovery, Your Honor?
        22           THE COURT:  Yes.  Just send out interrogatories.
        23           MS. O'LEARY:  Well, our entry deadline is not until
        24   May 28, and we would like to take advantage of that elongated
14:20   25   time.  That's the whole reason that we waived service, to give
```

14:20  1  us more time to answer and get ourselves ready for a lawsuit.
       2  And so initiating discovery would essentially eliminate that
       3  benefit that we have earned by waiving service.
       4           THE COURT:  I'm going to allow written discovery to be
14:20  5  commenced on May 17th.
       6           And if you have a squabble over discovery, I
       7  expect you to work together to resolve it and, if not, file
       8  something quickly with the Court.  And we will set up a
       9  hearing, probably by telephone conference, as quickly as my
14:21 10  schedule permits.
      11           MS. O'LEARY:  Yes, Your Honor.
      12           MR. NEWBERRY:  Yes, Your Honor.
      13           THE COURT:  Anything else?
      14           MR. NEWBERRY:  Not from plaintiff.
14:21 15           MS. O'LEARY:  Not from the state, Your Honor.
      16           THE COURT:  Thank you all.  You are excused.  Have a
      17  good weekend.
      18      *(Court adjourned at 2:21 p.m.)*
      19                              * * * *
      20     I certify that the foregoing is a correct transcript from
      21  the record of proceedings in the above-entitled cause.
      22  Date: June 26, 2019
      23
      24                     /s/ Mayra Malone
                             ----------------------------------------
                             Mayra Malone, CSR, RMR, CRR
      25                     Official Court Reporter