IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK HENRY MURPHY, JR., § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | Civil Action No.4:19-CV-1106 | |
| § | | |
| BRYAN COLLIER, ET AL. § | | |
| *Defendant.* § | | |
| § | | |

**Defendant Collier's Response to Plaintiff Patrick Henry Murphy's First Set of Interrogatories to Defendant Bryan Collier, Executive Director, Texas Department of Criminal Justice**

To:   Patrick Henry Murphy, through his attorney of record, David R. Dow and Jeffrey R. Newberry, University of Houston Law Center, 4604 Calhoun Road, Houston Texas 77204, ddow@central.uh.edu and jrnewber@central.uh.edu

Defendant, through the Attorney General for the state of Texas, submits the following **Defendant Collier's Response to Plaintiff's Patrick Henry Murphy's First Set of Interrogatories to Defendant Bryan Collier, Executive Director, Texas Department of Criminal Justice.**

Respectfully Submitted,

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil
Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

*/s/ Leah O'Leary*
**LEAH O'LEARY**
Assistant Attorney General
Law Enforcement Defense Division
Texas State Bar No. 24079074
Southern District ID No. 1563191

Office of the Attorney General
Law Enforcement Defense Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / Fax (512) 370-9918
Leah.Oleary@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS
COLLIER, DAVIS, AND LEWIS**

## CERTIFICATE OF SERVICE

I, **LEAH O'LEARY**, Assistant Attorney General of Texas, do hereby certify that on June 24, 2019, a true and correct copy of the foregoing was served by email to the following counsel of record, who consented in writing to accept service by electronic means:

David R. Dow
Jeffrey R, Newberry
UNIVERSITY OF HOUSTON LAW CENTER
4604 Calhoun Road
Houston, Texas 77204
*ddow@central.uh.edu*
*jrnewber@central.uh.edu*

*/s/ Leah O'Leary*
**LEAH O'LEARY**
Assistant Attorney General

**Defendant Collier's Response to Plaintiff Patrick Henry Murphy's First Set of Interrogatories to Defendant Bryan Collier, Executive Director, Texas Department of Criminal Justice.**

**Interrogatory 1:** Identify each person answering these interrogatories, supplying information, or assisting in any way with the preparation of the answers to these interrogatories.

**Answer:** Defendant Collier objects to this interrogatory to the extent it seeks information that is subject to an attorney-client privilege. Subject to and without waiving the stated objections and assertion of privileges, the following non-attorney people aided Mr. Collier by providing information:

- Jeremy Desel, TDCJ Director of Communications

**Interrogatory 2:** If defendant(s) has (have) not been sued in his or her correct name, state the correct name.

**Answer:** Defendant Collier's name is correct as stated in Plaintiff's First Amended Complaint.

**Interrogatory 3:** Identify every person with knowledge of any matter in any manner relevant to Plaintiff's action or claims, however remote, that is discoverable under Federal Rule of Civil Procedure 26(b) and summarize each person's knowledge and opinions.

**Answer:** Defendant Collier asserts that he cannot know or anticipate the personal knowledge or opinions of every employee of the Texas Department of Criminal Justice. Mr. Collier further asserts that he cannot know or anticipate what matters Plaintiff believes are relevant to his own actions or claims. To the extent this interrogatory requires Mr. Collier to assert legal conclusions about disputed relevancy, he objects to the interrogatory as improper and vague. Subject to and without waiving the stated objections and assertion of privileges, Mr. Collier has identified every person with knowledge he believes to be relevant in his Initial Disclosures and has provided a detailed summary of each person's knowledge.

**Interrogatory 4:** Identify all persons or entities that have possession, custody, or control of materials that are discoverable under Rule 26(b), the materials over which they have possession, custody, or control, and the location of those materials.

**Answer:**

| Name | Title | Document(s) | Location |
|------|-------|-------------|----------|
| Vickie Barrow | Manager I, Offender Grievance Dept. | Patrick Murphy Grievance Records | Produced to Plaintiff |
| Jerry Bell | Assistant Warden, Polunsky Unit | Patrick Murphy Library Records And Patrick Murphy's Disciplinary Records from Polunsky Unit | Produced to Plaintiff |
| Christina Pierce | Mailroom Supervisor, Polunsky Unit | Patrick Murphy Correspondence | Produced to Plaintiff |
| Glenda McNiel | Mailroom Supervisor, Polunsky Unit | Patrick Murphy Correspondence | Produced to Plaintiff |
| Michelle Lewis | Program Supervisor V, Plans and Operations | TDCJ Offender Visitation Plan | Produced to Plaintiff |
| Justin Brock | Manager IV, Executive Services | AD-07.30 (rev. 7), Religious Programming | Produced to Plaintiff |
| Lorie Davis | Director VII, Correctional Institutions Division | TDCJ Execution Procedure, adopted April 2019 | Produced to Plaintiff |
| David Collier | Retired Chaplain | Documents kept by Collier regarding executions in which he aided: Bates Nos. Murphy 1348–1684 | Produced to Plaintiff |
| Timothy Jones | Director of Chaplaincy | Documents created and maintained by Chaplain Jones regarding which executions he aided in: Bates Nos. Murphy 1731–1732 | Produced to Plaintiff |

**Interrogatory 5:** Identify Defendant's opinions and contentions about his or her defenses that relate to the facts or the application of law to the facts in this case.

**Answer:** Defendant Collier objects to this Interrogatory to the extent it requires him to tender his entire defense to this case. Moreover, Mr. Collier is not an attorney and is not responsible for applying law to facts. Mr. Collier, therefore, objects to this interrogatory to the extent it requires him to conduct and explain a legal analysis. Subject to and without waiving the stated objections and assertion of privileges, Mr. Collier asserts the following:

TDCJ has been successful in its security protocols and policies surrounding executions. Through its careful and thoughtful considerations, only trusted and capable TDCJ employees, who have demonstrated an ability to serve the State with integrity and treat offenders with dignity, have been selected to serve a role inside the execution chamber during an execution. TDCJ's careful and thoughtful consideration of employees to aid in executions are based on employees' demonstrated service in TDCJ, their demonstrated character for serving with integrity and dignity, their demonstrated ability to conduct themselves in a stressful situation with control, professionalism and good judgment, their ability to maintain discretion relating to executions, and many other immeasurable factors. Correctional Institutions Director Lorie Davis is responsible for determining when an employee is ready to take part in this very solemn process. It is my expectation that Ms. Davis will thoroughly analyze a prospective candidate and will only select an employee who has attained the appropriate experience and training and who has also proven to embody the integrity, character, and appropriate demeanor necessary for the role. Use of a background check would be a wholly insufficient manner of assessing whether a person who is not a TDCJ employee could safely and appropriately come inside the execution chamber during an execution.

Allowing a person who is not one of the TDCJ's employees inside the execution chamber would present a significant security risk. The risks include risks to the offender, a risk to the other TDCJ employees who are present, a risk of revealing the identity of the execution team, a risk to the unprepared and untrained outsider, a risk of disrupting the offender's family, a risk of disrupting the victim's family, and other risks. The TDCJ employees who serve a role in executions are trained and well-practiced. It is very important that the personnel involved be able to maintain the practiced routine and step-by-step protocols without interruption or deviation. Introduction of an outsider would be very disruptive to the rigid protocol of carrying out an execution. In order for the TDCJ personnel to be able to appropriately react to

any problem that may arise during an execution, they must not be distracted or required to worry about an outsider's safety or have to take steps to shield the outsider's vision and hearing from members of the confidential execution team who may be reacting to an unplanned issue.

TDCJ personnel are required to observe a number of executions and may serve roles other than inside the execution chamber before he or she serves a role inside the chamber. The consideration, assessment, judgment of character, training, and preparation could not be duplicated with an outsider.

In the time prior to an execution, every offender has equal time access to receive spiritual time with a pre-approved spiritual advisor during the following times: In the two and a half days leading up to an execution, an offender may spend all business hours with his spiritual advisor if he chooses—regardless of faith preference—which equates to approximately twenty (20) hours of spiritual time; and from 3:00–4:00 p.m. on the afternoon of the date of execution. Four to 6:00 p.m. are the final two hours before an execution may commence. From 4:00 p.m. until 6:00 p.m. on the date of execution, the execution team, the TDCJ chaplain, and other TDCJ employees are working to prepare in the execution chamber, in and around the holding area, and are walking around in the nearby corridors and areas as they prepare. During that time, the offender is being prepared for execution and may make phone calls as he chooses. The offender's time to eat dinner is also within the 4:00 to 6:00 p.m. hours. The offender's family is also being prepared for the execution in the hospitality house, where they are carefully kept so that they never see or come in contact with members of the execution team or with the victim's family members. It would not be possible to allow an outside spiritual advisor to be present in the holding area from 4:00 to 6:00 p.m. without compromising the confidentiality of the execution team, who are moving about the area in preparation, and without compromising security as personnel secure the area in and around the execution chamber and holding area. By restricting the holding area from 4:00 to 6:00 to only those TDCJ personnel that have been carefully considered as described above, TDCJ has been successful in limiting or preventing security breaches during these final critical hours. It is only with this high level of control and security that the execution process may be completed in the most humane manner possible and ensures that the offender and various family witnesses are treated with dignity throughout the process.

**Interrogatory 6:** Identify any statements that have been taken from Defendant, or taken on his or her behalf, relating to the facts that are the subject of this litigation, and do the following:

      a.      Identify the person who gave or made the statement.

      b.      Specify the date when the statement was taken.

      c.      Identify the person who took the statement.

      d.      State whether the statement was recorded, regardless of medium (e.g., paper or electronic), and if so, identify the material.

      e.      State whether Defendant will, without a formal request to produce, attach a copy of all statements described in the answer to this interrogatory.

**Answer:** Defendant Collier asserts that in his role as the Executive Director of TDCJ, he does not have personal knowledge of every TDCJ employee that may have made a statement relating to this lawsuit. Mr. Collier asserts the attorney-client privilege to the extent any response to this interrogatory reflects statements made between attorney and client and no third party. Mr. Collier objects to the Interrogatory to the extent it seeks production of documents, because production of documents may not be required in an answer to an interrogatory under Rule 33. *See, e.g., Stovall v. Gulf and South Am Steamship Co., Inc.*, 30 F.R.D. 125, 154 (1961). Subject to and without waiving the stated objections and assertion of privileges, Mr. Collier has not provided a statement to anyone and no statements have been made on his behalf. Mr. Collier is not aware of any statements taken from any other Defendant. Mr. Collier is aware of the following official statement:

> In response to a recent ruling from the Supreme Court of the United States, the Texas Department of Criminal Justice has made a change to its execution protocol to only allow TDCJ security personnel in the execution chamber. TDCJ chaplains will continue to be available to an offender until they are transferred to the execution chamber. The offenders approved spiritual advisor will continue to have the ability to visit the offender and be present in the witness room. This change is effective immediately.
>
> Specifically, the change is made in Section V, Part F of the Execution Procedure.
> "Only TDCJ security personnel shall be permitted in the execution chamber. The CID Director or designee and the Huntsville Unit Warden or designee shall accompany the offender while in the Execution Chamber. TDCJ Chaplains and Ministers/Spiritual Advisors designated by the offender may observe the execution only from the witness rooms."

This statement was issued on April 3, 2019, via electronic mail in response to requests by various media outlets, by TDCJ Communications Director Jeremy Desel.

**Interrogatory 7:** Identify any steps taken to preserve materials in any matter relevant to Plaintiff's actions or claims, however remote, that are discoverable under Rule 26(b), including any alterations to routine operations of an electronic information system, and do the following:

    a.    Identify whether a specific litigation-hold policy or other similar suspension was created.

    b.    Identify the person who created the litigation-hold policy.

    c.    Specify the date when the litigation-hold policy was created.

    d.    State whether the litigation-hold policy was recorded, regardless of the medium (e.g., paper or electronic), and if so, identify the material.

    e.    Identify the persons who received the litigation-hold policy.

    f.    Specify the date when the persons received the litigation-hold policy.

    g.    State whether Defendant will, without a formal request to produce, attach a copy of all materials described in the answer to this interrogatory.

**Answer:** Mr. Collier objects to the Interrogatory to the extent it seeks production of documents, because production of documents may not be required in an answer to an interrogatory under Rule 33. *See, e.g.*, *Stovall v. Gulf and South Am Steamship Co., Inc.*, 30 F.R.D. 125, 154 (1961). Subject to and without waiving said objections, Frederick Cook, Network Specialist IV, has verified that a litigation hold, ensuring that email communications are not deleted in any potential or active litigation including *Murphy v. Collier, et al.*, has been in place on Mr. Collier's email account since November 25, 2014. Notices to retain were sent, by the TDCJ's Office of the General Counsel (OGC) personnel to divisional custodians of records on April 8, 2019. An updated reminder notice to retain was sent to Mr. Collier and his executive assistant, Brittney Skains, on May 23, 2019, by OGC personnel. A privilege log has been or will be produced regarding these attorney-client and work-product communications.

**Interrogatory 8:** Identify everyone who has been in the execution chamber during an execution since December 7, 1982, the dates of the executions at which they were present, whether they were employed by TDCJ, and the date they began working for TDCJ. If you do not have these records going back to December 7, 1982, provide this information for all executions for which you have retained this information. Provide copies of any material related to this interrogatory that has been retained. In the event this information has not been retained for executions going back to December 7, 1982, please follow the instructions above in describing the retention policy which resulted in the destruction of this information. If you do not have this information, identify the person who does.

**Answer:** Defendant Collier objects to this interrogatory to the extent it seeks identifying information for "any person who participates in an execution procedure, including a person who uses, supplies, or administers a substance during the execution; and any person or entity that manufactures, transports, tests, procures, compounds, prescribes, dispenses, or provides a substance during the execution." See Tex. Gov't Code § 552.1081 and Tex. Code Crim. Pro. Art. 43.14. Generally, the people protected by these statutes are not present inside the execution chamber at the time of execution.

Mr. Collier further objects to this interrogatory on the grounds that it is not reasonably limited in time. Records going back to 1982 are too attenuated to be relevant to any issue in this case. Plaintiff Murphy was not sentenced to death until 2003, so records dating before 2003 are too attenuated to be relevant. Mr. Collier further objects to this interrogatory on the grounds that it is overly burdensome based on the overbroad date range. Because records dating so far back are too attenuated to be relevant, the probative value of this request is substantially outweighed by the burden it places on the responding party. Subject to and without waiving the stated objections and assertion of privileges, Mr. Collier responds that he has no knowledge of the persons who may have been present inside the execution chamber for executions in which he was not involved. Mr. Collier has provided the best available information responsive to this Interrogatory in his Initial Disclosures. Mr. Collier is not aware of any other persons being present in the execution chamber at the time of execution other than those listed in his Initial Disclosures. To Mr. Collier's knowledge, no non-TDCJ employee has ever been present inside the execution chamber at the time of an execution.

TDCJ does not create or maintain records in the regular course and scope of business that list the persons present during an execution. To the extent any TDCJ employee

creates his or her own record or log of executions for which they were present inside the execution chamber, Mr. Collier is not aware of such records. The information provided in Defendants' Initial Disclosures regarding persons present inside the execution chamber was provided based on memory and not based on a document.

**Interrogatory 9:** Identify all of the current death row prisoners who have designated a religion pursuant to the process described in AD-07.30 or any other process, what religion was designated, and when that designation was made. If for any of the current death row inmates, their currently designated religion is not the one they originally designated (indicating they updated their original designation through the process described in AD-07.30 or some other process), identify all the religions that inmate has designated and the dates those designations were made. If any policy or statute requires this information to be kept confidential, please provide a specific citation to the relevant policy or statute and provide the information requested by omitting the name of the prisoner. Provide copies of any materials related to these designations. If you do not have this information, identify the person who does.

**Answer:** Defendant Collier objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this case. This lawsuit is not a class action. A claim brought under RLUIPA requires a fact-specific inquiry and must be limited to (1) the sincere religious beliefs of the plaintiff only; and (2) the compelling penological interests furthered by enforcing the policy against the Plaintiff. *See Davis v. Davis*, 826 F.3d 258 (5th Cir. 2016). The court could not require TDCJ to change its policy—relief could extend no further than necessary to remedy a perceived violation as to Murphy's rights. *See* 18 U.S.C. §§ 3626(a)(1)(A), 3626(a)(2). Other offenders' religious designations, changes in religious designations, and the dates that offenders decided to change their religious designations do not make any fact in this case more or less likely. Mr. Collier further objects to this Interrogatory to the extent it seeks production of documents, because production of documents may not be required in an answer to an interrogatory under Rule 33. *See, e.g.*, *Stovall v. Gulf and South Am Steamship Co., Inc.*, 30 F.R.D. 125, 154 (1961). Subject to and without waiving the stated objections, Mr. Collier responds that in his role as the Executive Director, it is not part of his duties or responsibilities to review an offender's changes in their religious designations. He has no knowledge of the religious designations of offenders on death row or their historical changes in religious designations. While maintaining his objections to relevancy and improper request for documents, Defendants have produced a spreadsheet listing current death row offenders and each of their religious designations. That information is not in the custody or control of Mr. Collier and is not used to carry out his official duties in relation to executions.

**Interrogatory 10:** Identify any religions that have been designated by a Texas death row inmate from July 2, 1976 to present that are not included in your answer to Interrogatory 9. Identify the name of the inmate who designated the religion and the date the designation was made. If any policy or statute requires this information to be kept confidential, please provide a specific citation to the relevant policy or statute and provide the information requested by omitting the name of the prisoner. Provide copies of any material related material that has been retained. To the extent this material has not been maintained, describe the retention policy under which the materials were destroyed. If you do not have this information, identify the person who does.

**Answer:** Defendant Collier objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in this case. This lawsuit is not a class action. A claim brought under RLUIPA requires a fact-specific inquiry and must be limited to (1) the sincere religious beliefs of the plaintiff only; and (2) the compelling penological interests furthered by enforcing the policy against the Plaintiff. *See Davis v. Davis*, 826 F.3d 258 (5th Cir. 2016). The court could not require TDCJ to change its policy—relief could extend no further than necessary to remedy a perceived violation as to Murphy's rights. *See* 18 U.S.C. §§ 3626(a)(1)(A), 3626(a)(2). Other offenders' religious designations, changes in religious designations, and the dates that offenders decided to change their religious designations do not make any fact in this case more or less likely. Mr. Collier further objects to this Interrogatory to the extent it seeks production of documents, because production of documents may not be required in an answer to an interrogatory under Rule 33. *See, e.g.*, *Stovall v. Gulf and South Am Steamship Co., Inc.*, 30 F.R.D. 125, 154 (1961). Subject to and without waiving the stated objections, Mr. Collier responds that in his role as the Executive Director, it is not part of his duties or responsibilities to review an offender's change in their religious designation. He has no knowledge of the religious designations of offenders on death row or their historical changes in religious designations. It is not within the normal course and scope of Mr. Collier's duties to review historical religious data for offenders that were on death row in the past.

**Interrogatory 11:** Describe the difference between the background check performed on ministers who are allowed to visit death row inmates in that capacity when the prisoners are in the holding cell at the Walls Unit and the check performed on chaplains who are allowed to be present in the execution chamber. Provide copies of any material documenting these procedures. To the extent this material has not been maintained, describe the retention policy under which the materials were destroyed. If you do not have this information, identify the person who does.

**Answer:** Defendant Collier objects to this interrogatory in that it assumes contested facts not in evidence—specifically, that chaplains are permitted inside the execution chamber. Under the current policy, no chaplains are permitted inside the execution chamber at the time of an execution. Mr. Collier further objects to this interrogatory to the extent it seeks production of documents, because production of documents may not be required in an answer to an interrogatory under Rule 33. *See, e.g.*, *Stovall v. Gulf and South Am Steamship Co., Inc.*, 30 F.R.D. 125, 154 (1961). In addition, Mr. Collier objects to the use of the term "background check" as vague.

Subject to and without waiving said objections and without adopting the contested facts asserted, Mr. Collier directs Plaintiff to AD 7.30 and the TDCJ Death Row Plan, as previously disclosed as part of his initial disclosures, which contains the policies and procedures by which a spiritual advisor may seek permission to visit an offender at the Huntsville or Polunsky units. Presuming that "background check" means having a criminal history search conducted by an official law enforcement agency, such as the Texas Department of Public Safety, spiritual advisors, unlike TDCJ employees, are not subject to a background check.

**Interrogatory 12:** Describe the difference between the background check performed on ministers who are allowed to visit death row inmates in that capacity in the visiting area at the Polunsky Unit and the check performed on chaplains who were allowed to be present in the execution chamber. Provide copies of any material documenting these procedures. To the extent this material has not been maintained, describe the retention policy under which the materials were destroyed. If you do not have this information, identify the person who does.

**Answer:** Defendant Collier objects to this interrogatory in that it assumes contested facts not in evidence—specifically, that chaplains are permitted inside the execution chamber. Under the current policy, no chaplains are permitted inside the execution chamber at the time of an execution. Mr. Collier further objects to this interrogatory to the extent it seeks production of documents, because production of documents may not be required in an answer to an interrogatory under Rule 33. *See, e.g.*, *Stovall v. Gulf and South Am Steamship Co., Inc.*, 30 F.R.D. 125, 154 (1961). In addition, Mr. Collier objects to the use of the term "background check" as vague.

Subject to and without waiving said objections, Mr. Collier directs Plaintiff to AD 7.30 and the TDCJ Death Row Plan, as previously disclosed as part of his initial disclosures, which contains the policies and procedures by which a spiritual advisor may seek permission to visit an offender at the Huntsville or Polunsky units. Presuming that "background check" means having a criminal history search

conducted by an official law enforcement agency, such as the Texas Department of Public Safety, spiritual advisors, unlike TDCJ employees, are not subject to a background check.

**Interrogatory 13:** Identify all of the people who were investigated to determine whether they could be present in the chamber and were subsequently authorized to be admitted or were admitted to the chamber during an execution. Provide copies of any material that has been maintained related to these investigations. To the extent this material has not been maintained, describe the retention policy under which the materials were destroyed. If you do not have this information, identify the person who does.

   **Answer:** Defendant Collier objects to this interrogatory on the ground that it is not reasonably limited in time. Subject to and without waiving the stated objections, and assuming Defendants' position on the relevant time period, Mr. Collier responds as follows:

TDCJ does not create or maintain records in the regular course and scope of business that list the persons present inside the execution chamber during an execution. To the extent any TDCJ employee individually creates his or her own record or log of executions for which they were present inside the execution chamber, Mr. Collier is not aware of such records. Defendants' Initial Disclosures identifies persons present inside the execution chamber and was provided based on memory.

Mr. Collier disagrees with the term "*investigated*" and therefore cannot answer the interrogatory in that way. Rather, Mr. Collier asserts that each TDCJ employee who has served a role inside the execution chamber during an execution was carefully *considered* before being permitted inside the execution chamber. Mr. Collier asserts that CID Director Lorie Davis is responsible for the consideration and selection process as set forth above in response to interrogatory number 5.

**Interrogatory 14:** Identify all of the people who were investigated to determine whether they could be present in the chamber but were subsequently denied. Provide copies of any material that has been maintained related to these investigations. To the extent this material has not been maintained, describe the retention policy under which the materials were destroyed. If you do not have this information, identify the person who does.

   **Answer:** Defendant Collier objects to this interrogatory on the ground that it is not reasonably limited in time. Subject to and without waiving the stated

objections, and assuming Defendants' position on the relevant time period, Mr. Collier responds as follows:

TDCJ does not create or maintain records in the regular course and scope of business that list the persons present inside the execution chamber during an execution. To the extent any TDCJ employee individually creates his or her own record or log of executions for which they were present inside the execution chamber, Mr. Collier is not aware of such records. Defendants' Initial Disclosures identifies persons present inside the execution chamber and was provided based on memory.

Mr. Collier disagrees with the term "*investigated*" and therefore cannot answer the interrogatory in that way. Rather, Mr. Collier asserts that each TDCJ employee who has served a role inside the execution chamber during an execution was carefully *considered* before being permitted inside the execution chamber. Mr. Collier asserts that CID Director Lorie Davis is responsible for the consideration and selection process as set forth above in response to interrogatory number 5.

**Interrogatory 15:** Identify any instances in which any person in the execution chamber during an execution has assaulted any other person in the execution chamber, attempted to gain access to the execution team, attempted to pull the intravenous lines out of the condemned, taunted the victim's family and friends, or created any other disruption during an execution. For each of these instances, identify the person who caused the disruption, whether the person was employed by TDCJ, the date of the disruption, the date the person began working for TDCJ, and the nature of the disruption. Provide any material that has been retained related to any identified disruptions. If you do not have this information, identify the person who does.

**Answer:** Defendant Collier objects to this interrogatory on the ground that it is not reasonably limited in time. Mr. Collier further objects to this interrogatory to the extent it seeks production of documents, because production of documents may not be required in an answer to an interrogatory under Rule 33. *See, e.g., Stovall v. Gulf and South Am Steamship Co., Inc.*, 30 F.R.D. 125, 154 (1961).

Subject to and without waiving stated objections, Mr. Collier asserts, as explained more fully in response to interrogatory number 5, as TDCJ has been successful in its security protocols and policies surrounding executions, he has no knowledge of any instances in which a TDCJ employee has caused any disruption in the execution chamber. Mr. Collier has not directly witnessed any disruptions made by anyone either in the execution chamber or without, but is aware of a disruption during the execution of Billie Coble on February 28, 2019, in which a family member of Mr.

Coble's engaged in an aggressive display that resulted in the family member's removal from the witness viewing room. There are criminal charges pending against the family member in connection with the incident, and as it is currently under criminal investigation, no further information may be provided.

**Interrogatory 16:** Identify any instances in which any clerical person in the witness room during an execution has assaulted any other person in the witness room, attempted to gain access to the execution team, taunted the victim's family and friends, or created any other disruption during an execution. For each of these instances, identify the person who caused the disruption, whether the person had been approved to visit TDCJ inmates as a minister, the date the person was approved in that capacity, the date of the disruption, and the nature of the disruption. Provide any material that has been retained related to any identified disruptions. If you do not have this information, identify the person who does.

**Answer:** Defendant Collier objects to this interrogatory on the ground that it is not reasonably limited in time. Mr. Collier further objects to this interrogatory to the extent it seeks production of documents, because production of documents may not be required in an answer to an interrogatory under Rule 33. *See, e.g., Stovall v. Gulf and South Am Steamship Co., Inc.*, 30 F.R.D. 125, 154 (1961).

Subject to and without waiving stated objections, Mr. Collier asserts, as explained more fully in response to interrogatory number 5, as TDCJ has been successful in its security protocols and policies surrounding executions, he has no direct knowledge of any instances in which a TDCJ employee or visiting spiritual advisor has caused any disruption in the witness room.  Mr. Collier asserts that CID Director Lorie Davis, Communications Director Jeremy Desel, Communications Officer Robert Hurst, or Chaplain Tim Jones, may have information responsive to this request.

**Interrogatory 17:** Identify any instances in which any clerical person visiting any inmate at the holding cell outside of the execution chamber the afternoon of a scheduled execution assaulted any other person, attempted to gain access to the execution team, taunted the victim's family and friends, or created any other disruption during an execution. For each of these instances, identify the person who caused the disruption, whether the person had been approved to visit TDCJ inmates as a minister, the date the person was approved in that capacity, the date of the disruption, and the nature of the disruption. Provide any material that has been retained related to any identified disruptions. If you do not have this information, identify the person who does.

**Answer:** Defendant Collier objects to this interrogatory on the ground that it is not reasonably limited in time. Mr. Collier further objects to this interrogatory to the extent it seeks production of documents, because production of documents may not be required in an answer to an interrogatory under Rule 33. *See, e.g.*, *Stovall v. Gulf and South Am Steamship Co., Inc.*, 30 F.R.D. 125, 154 (1961).

Subject to and without waiving stated objections, Mr. Collier asserts, as explained more fully in response to interrogatory number 5, as TDCJ has been successful in its security protocols and policies surrounding executions, he has no direct knowledge of any instances in which a TDCJ employee or visiting spiritual advisor has caused any disruption in the witness room. Mr. Collier asserts that CID Director Lorie Davis, Communications Director Jeremy Desel, Communications Officer Robert Hurst, or Chaplain Tim Jones, may have information responsive to this request.

**Interrogatory 18:** Identify all of the people involved in codifying the execution protocol. Provide copies of any material identifying these people. If you do not have this information, identify the person who does.

**Answer:** Defendant Collier objects to this interrogatory on the ground that it is not reasonably limited in time. Mr. Collier further objects to this interrogatory to the extent it seeks production of documents, because production of documents may not be required in an answer to an interrogatory under Rule 33. *See, e.g.*, *Stovall v. Gulf and South Am Steamship Co., Inc.*, 30 F.R.D. 125, 154 (1961). In addition, Mr. Collier objects to this interrogatory and asserts the deliberative process privilege, which protects agency officials' communications and work product with regard to creating agency policies. *See Skelton v. U.S. Postal Service*, 678 F.2d 35, 38 (5th Cir. 1982) (explaining that the deliberative process privilege covers documents reflecting advisory opinions, recommendations and deliberations comprising part of process by which governmental decisions and policies are formulated.). Mr. Collier further asserts that some portion of the responsive information is protected under the attorney client privilege. Subject to and without waiving the stated objections and assertions of privilege, and assuming Defendants' position on the relevant time period, Mr. Collier asserts that Lorie Davis, as the current Director of CID, is the person who is statutorily authorized to designate execution procedures and protocols. She is the signatory on the Execution Procedure (April 2, 2019), which has been produced as Bates Numbers: Murphy 749–757.

**Interrogatory 19:** Briefly describe the procedure for making changes to the execution protocol. Provide copies of any material related to this procedure. If you do not have this information, identify the person who does.

**Answer:** Defendant Collier objects to this interrogatory and asserts the deliberative process privilege, which protects agency officials' communications and work product with regard to the processes of creating agency policies. *See Skelton v. U.S. Postal Service*, 678 F.2d 35, 38 (5th Cir. 1982) (explaining that the deliberative process privilege covers documents reflecting advisory opinions, recommendations and deliberations comprising part of process by which governmental decisions and policies are formulated.). Mr. Collier further asserts that some portion of the responsive information is protected under the attorney client privilege. Mr. Collier further objects to the term "protocol" as vague and undefined. Mr. Collier will assume that the term's meaning is synonymous with "written policy." Subject to and without waiving the stated objections and assertions of privilege, Mr. Collier asserts that as part of the procedure for making changes to the execution protocol, he will review the suggested changes and orally confer with CID Director Lorie Davis to finalize the language of the change. Once the agreed upon change is finalized, Ms. Davis signs the new policy.

**Interrogatory 20:** Identify all of the changes that have been made to the execution protocol during the past twenty years, including the date the change was made. Provide copies of all versions of the Executions Procedures document that have existed during this time. If you do not have this information, identify the person who does.

**Answer:** To the extent this interrogatory seeks versions and drafts other than final versions, such documents are protected by the deliberative process privilege. Defendant Collier objects to this interrogatory and asserts the deliberative process privilege, which protects agency officials' communications and work product with regard to the processes of creating agency policies. *See Skelton v. U.S. Postal Service*, 678 F.2d 35, 38 (5th Cir. 1982) (explaining that the deliberative process privilege covers documents reflecting advisory opinions, recommendations and deliberations comprising part of process by which governmental decisions and policies are formulated.). Mr. Collier further objects to this Interrogatory to the extent it seeks production of documents, because production of documents may not be required in an answer to interrogatory under Rule 33. *See, e.g., Stovall v. Gulf and South Am Steamship Co., Inc.*, 30 F.R.D. 125, 154 (1961). Subject to and without waiving the stated objections and assertions of privilege, changes to section V.F of the Execution Procedure were implemented on April 2, 2019. That document has been previously produced as Bates Numbers: Murphy 749–757.

**Interrogatory 21:** Paragraph V.C of the April 2019 version of Execution Procedure states that Minister/Spiritual Advisor visits shall occur between 3:00 and 4:00 pm CST unless exceptional circumstances exist. Identify whether the TDCJ's Chaplain's access to the inmate is similarly limited to this one-hour window. If so, explain why "TDCJ Chaplain" was not included in this paragraph but was included in Paragraphs III.B.12 and V.F. If you do not have this information, identify the person who does.

**Answer:** The TDCJ Chaplain performs secular tasks throughout the day of an execution that are not related to spiritual advisement of the offender, such as facilitating phone calls for the offender, answering questions about execution procedures for the offender, ensuring the offender has completed necessary documents such as property disposition instructions, meeting with the offender's family to explain the execution procedures and what to expect when entering the viewing room, and other tasks. The TDCJ chaplain's performance of these secular tasks is not limited to 3:00 p.m. to 4:00 p.m. The Chaplain's "access" to the inmate, therefore, is not limited to 3:00 to 4:00 because the Chaplain communicates with the offender to perform secular tasks.

**Interrogatory 22:** Paragraph V.C of the April 2019 version of Execution Procedure states that Minister/Spiritual Advisor visits shall occur between 3:00 and 4:00 pm CST unless exceptional circumstances exist. Define the meaning of "exceptional circumstances," who determines whether such circumstances are present, and the process by which this determination is made.

**Answer:** "Exceptional circumstances" in the referenced policy has its plain meaning. It includes situations that are out of the ordinary course of procedures, but that cannot be anticipated, and no exhaustive list of these circumstances can be created. As stated in the policy, the Huntsville Unit Warden determines whether such circumstances are present, and depending on the extent of the exception, the Warden may confer with Lorie Davis to make the final determination.

**Interrogatory 23:** Identify any circumstances under which the Huntsville Unit Warden would grant an exception to the one-hour visitation window for Minister/Spiritual Advisor visits as explained in Paragraph V.C of the April 2019 version of Execution Procedure. Identify the procedure for identifying such circumstances and all individuals involved in any manner in determining whether such circumstances are present. Identify the limits of the exception the Warden could

grant under this provision. If you do not have this information, identify the person who does.

**Answer:** "Exceptional circumstances" includes situations that are out of the ordinary course of procedures, but that cannot be anticipated, and no exhaustive list of these circumstances can be created. As stated in the policy, the Huntsville Unit Warden determines whether such circumstances are present, and depending on the extent of the exception, the Warden may confer with Lorie Davis to make the final determination. The Warden would not have the authority to extend the visitation hour beyond 5:00 p.m. or to an extent that interferes with other preparation that must be done prior to the execution. The Warden would not have the authority to grant an exception by expanding the hour into several hours.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK HENRY MURPHY, JR., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.4:19-CV-1106 |
| | § | |
| BRYAN COLLIER, ET AL. | § | |
| *Defendant.* | § | |
| | § | |

VERIFICATION FOR RESPONSES TO INTERROGATORIES

I, BRYAN COLLIER, CERTIFIY UNDER PENALTY OF PERJURY THAT THE INTERROGATORY RESPONSES ATTACHED HERETO ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

_____
SIGNATURE OF CLAIMANT

DATE: _____