January 24, 2020

Honorable George C. Hanks, Jr.
United States District Judge

      RE:    Patrick Murphy v. Lorie Davis, et al., No. 4:19-cv-01106
             Joint Letter Requesting Discovery Conference

To the Honorable Judge George Hanks, Jr.:

      On January 14 at 10:30 am, the parties conferenced via telephone regarding discovery to which Counsel for Plaintiff believe they are entitled before trial commences. David R. Dow and Jeffrey R. Newberry participated as Counsel for Mr. Murphy. Leah O'Leary and Amy L. Prasad participated as Counsel for Defendants. Two categories of discovery remain contested: (1) a list of chaplains who worked in the execution chamber from 1982 until 2019, along with the date their employment with TDCJ began; and (2) the depositions of the three security officers who work in the death house during executions.

      (1)    Regarding the first item, the parties remain at an impasse. Plaintiff believes this information is essential because Defendants have claimed chaplains were allowed to work in the execution chamber only after being observed for a long period of time. Defendants maintain execution packets, which include a list of three chaplains who worked in the death house immediately prior to an execution, and it would have been one of those listed chaplains who would have gone on to work in the execution chamber. Determining which chaplains worked in the execution chamber would therefore require that the chaplains who worked in the death house be questioned about whether they worked in the chamber. The four chaplains Plaintiff questioned in June knew (because they kept their own records) during which executions they worked in the chamber.

      Because Defendants have previously asserted it would take one hour to find this information for each execution, Plaintiff has proposed as a compromise that he be provided records pertaining to executions from January 1, 2000 to April 2, 2019. 180 inmates were executed between January 1, 2007 and April 2, 2019, when Defendants amended their policy. Defendants have already identified the chaplain who worked in the chamber during 98 of these executions. 180 inmates were executed between January 1, 2000 and January 1, 2007. Defendants have provided the requested information for none of these executions. Under Plaintiff's compromised request, he is therefore asking Defendants to provide this information for 262 (not 560) executions.

      Defendants object and assert that TDCJ does not create or maintain any record that identifies the chaplains inside the execution chamber. Plaintiff has already questioned four chaplains, and questioned them to the extent of their recollections on who was in the execution chamber during their tenure, which dated back to March 2007 (when Chaplain D. Collier began serving inside the execution chamber). Memory is the only source of such information

and their collective memories on this issue have been exhausted. Additionally, execution documents that are maintained would only provide a general list of chaplains who were on duty in some capacity during an execution, but would not identify which chaplain would have been in the chamber. Furthermore, in order to obtain this general list, a TDCJ employee would need to locate the physical file, physically pull the file, sift through the paperwork to pull out the specific forms included in the execution packet, make a copy, and review and redact confidential information. It is estimated that providing this information would take an hour per file, totaling 560 hours, or approximately 3.5 months in business days. Defendants assert that the burden of obtaining such information far outweighs the attenuated value of such information, should it exist, given that the documents will not identify who was in the chamber. Any such documents would merely serve as a pre-step for Plaintiff to conduct additional, cumulative depositions of likely-retired chaplains, in addition to the four chaplains already deposed in this case.

(2) Regarding the second category of contested discovery, Counsel for Defendants, suggested that, as a compromise, Plaintiff depose one security officer instead of three. Counsel for Plaintiff agreed to the suggested compromise, assuring Counsel for Defendants they would be willing to designate the deposition's transcript as being confidential and even conceal the officer's name should Defendants believe that necessary.

On January 21, Counsel for Defendants informed Counsel for Plaintiff that her clients are opposed to the deposition of any correctional officer who is involved with executions, as the identity of those officers is kept confidential for their own safety. Defendants offered a major or warden for deposition as a compromise, to which Plaintiff does not agree. Defendants assert Plaintiff has already deposed Director Lorie Davis, who is TDCJ's authority over executions. There is nothing raised in Defendants' motion for summary judgement that gives rise to the need for additional depositions of security personnel that did not already exist during Ms. Davis's deposition. Director Davis was the best official to depose regarding pre-execution training and the role of security officers during executions, and additional depositions of security personnel would be cumulative.[1] A major or warden is present and involved in security in and around the death house on the days of executions. A major or warden will be able to testify based on their personal knowledge and experience regarding the training and preparation they and the correctional officers underwent prior to serving a role in executions, and explain what security personnel do throughout the day of an execution. Three additional depositions over the same subject matter would be cumulative and wasteful.

Last week, Defendants proposed an offer in an attempt to settle this suit. Counsel for Plaintiff presented the offer to their client, who rejected the offer. Because they have been unable to settle this suit or to resolve the remaining two issues on which they disagree, the parties jointly request discovery conference with the Court.

---

[1] Contrary to Defendants' present assertion, as Davis testified in her deposition, she does not personally go to the death house before an execution, ECF No. 38-7 at 55, so she, in fact, does not possess information related to what security officers actually do in the death house.

Respectfully submitted,

| | |
|---|---|
| /s/ David R. Dow | /s/ Leah O'Leary |
| Texas Bar No. 06064900 | Texas Bar No. 24079074 |
| University of Houston Law Center | Southern Filing No. 1563191 |
| 4604 Calhoun Rd. | Assistant Attorney General |
| Houston, Texas 77204-6060 | Leah.Oleary@oag.texas.gov |
| 713-743-2171 | |
| ddow@central.uh.edu | /s/ Amy L. Prasad |
| | Texas Bar No. 24037295 |
| /s/ Jeffrey R. Newberry | Southern Filing No. 563045 |
| Texas Bar No. 24060966 | Assistant Attorney General |
| University of Houston Law Center | Amy.Prasad@oag.texas.gov |
| 4604 Calhoun Rd. | |
| Houston, Texas 772040-6060 | Law Enforcement Defense Division |
| 713-743-6843 | P.O. Box 12548 |
| jrnewber@central.uh.edu | Austin, Texas 78711-2548 |
| | P: 512-463-2080 |
| *Counsel for Plaintiff* | *Counsel for Defendants* |