IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | |
|---|---|
| **PATRICK HENRY MURPHY, JR.,** § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> **BRYAN COLLIER,** Executive Director, § <br> Texas Department of Criminal Justice, § <br> Huntsville, Texas § <br> § <br> **LORIE DAVIS,** Director, Texas Department § <br> of Criminal Justice, Correctional Institutions § <br> Division, Huntsville, Texas § <br> § <br> **BILLY LEWIS,** Warden, Texas Department § <br> of Criminal Justice, Huntsville Unit, § <br> Huntsville, Texas § <br> § <br> *Defendants.* § | Civil No.4:19-cv-01106 <br> ***CAPITAL CASE*** |

**Briefing Pursuant to the Court's June 24, 2020 Order**

On June 24, 2020, the Court entered an Order denying the Defendants' Motion for Reconsideration. ECF No. 91. In the order, the Court invited the parties to submit additional briefing on any of the four topics suggested by the Court's Order. Counsel now files this briefing pursuant to the Court's Order. This briefing responds to the second, third, and fourth topics suggested in the Court's Order: the role the presence of clergy has played in executions throughout history and

1

in Texas specifically, the policies of other jurisdictions regarding access to chaplains before an execution and in the execution chamber, and the training or experience a spiritual advisor should have before being allowed in the execution chamber.

I. **The role the presence of clergy has played in executions throughout history and in Texas specifically**

In the Christian tradition, the presence of a member of the clergy at the time of death derives from the Jesus Christ's execution and his ministry to the men being crucified alongside him. *See Luke* 23:42-43. The belief that a person's dying moments are critical to salvation has long persisted. *See, e.g.*, Ralph A. Houlbrooke, *Death, Religion, and the Family in England, 1480-1750* 147-49 (1998). Of course, that belief (i.e. that a person's dying moments are critical) is not one that is unique to Christianity. As this Court is well-aware, the belief that precipitated this suit is a Buddhist's belief that his ability to enter into the afterlife for which he strives depends upon his ability to maintain focus on the Buddha during his dying moments.

In this country during the nineteenth century, executions were conducted in public. Clergy were present on the gallows during these events. Stuart Banner, *The Death Penalty: An American History* 35-36

(2002). With a large audience usually present, these ministers would often take the opportunity to deliver a sermon to the audience consisting largely of what the spectators needed to do to avoid the soon-to-be fate of the person who was being executed. *Id.* However, in the immediate moments before the execution, their attention turned to providing comfort to the condemned.

Many of the surviving accounts of executions carried out during this period involve those of the conspirators found to be responsible for the assassination of Abraham Lincoln. On July 5, 1865, President Andrew Johnson endorsed a military commission's recommendation of a death sentence for George Atzerodt, David Herold, Lewis Powell, and Mary Surratt for conspiring to assassinate the president, then-Vice President Johnson, and Secretary of State William Seward. Elizabeth D. Leonard, *Lincoln's Avengers: Justice, Revenge, and Reunion after the Civil War* 130 (2004). The four prisoners were given the opportunity to meet with a spiritual advisor before their sentences were carried out. *Id.* Mary Surratt requested two Catholic priests, Fathers Jacob A. Walker and B.F. Wiget, be present with her. *Id.* Powell requested a

Baptist minister. *Id*. Atzerodt agreed to meet with a Lutheran pastor recommended by one of the officers overseeing the execution. *Id*.

On the afternoon of July 7, 1865 "the condemned, their guards, and their spiritual advisers moved slowly through the prison door, across the courtyard, and up the thirteen steps to the gallows platform." *Id*. at 133. A priest held a crucifix in front of Mary Surratt as she walked through the courtyard. James L. Swanson & Daniel Weinberg, *Lincoln's Assassins: Their Trial and Execution* 28 (2008). Powell spoke with his spiritual adviser. *Id*. "[W]hile Father Wiget held the cross before [Surratt], Father Walter read the preparatory prayers for death." *Id*. Atzerodt listened attentively to his spiritual advisor. *Id*. As the execution order was read, Surratt's spiritual advisers were "engaged [in] administering the sacrament." *Id*. After all of the preparations were made, the executioner gave the signal and the four prisoners were simultaneously executed. *Id*.

When executions were removed from the public view, the sermon that had accompanied them disappeared, but members of the clergy remained part of the process to counsel and provide comfort to the condemned. Walter C. Long, *The Constitutionality and Ethics of*

4

*Execution-Day Prisonchaplaincy*, 21 Tex. J.C.L. &. C.R. 1, 11 (2015). In Texas, before Defendants amended their execution protocol in 2019, prison chaplains would accompany the condemned into the execution chamber, and they would often place their hands on the prisoners until the condemned died as a way of providing some amount of comfort to the soon-to-be executed. *Id.* at 12.

Reverend Carroll Pickett was a TDCJ chaplain and participated in executions at the Walls Unit from 1982 until 1995.[1] One of the executions he remembers most vividly is that of Carlos DeLuna, who was executed on December 7, 1989. In his memoir, Pickett recalls how DeLuna became distressed in the execution chamber when he (Pickett) was blocked from DeLuna's view by members of the tie-down team. Rev. Carroll Pickett, *Within These Walls: Memoirs of a Death House Chaplain* (St. Martin's Press 2002). DeLuna had requested Pickett hold his hand during while he was executed. *Id.* Not allowed to hold his hand, Pickett instead held DeLuna's ankle and, in that way, comforted DeLuna in his final moments. *Id.* Rev. Ken Houston similarly provided

---

[1] *See, e.g.*, Kiko Martinez, *Death and the Chaplain*, San Antonio Current (Apr. 30, 2008), *available at* https://www.sacurrent.com/sanantonio/death-and-the-chaplain/Content?oid=2282894.

comfort to the inmates he accompanied during their executions by holding their legs.[2]

While Defendants have reacted to Murphy's request by removing the clergy from the execution chamber in Texas altogether, members of the clergy continue to play a role in the execution chamber in other jurisdictions. For example, the last person to be executed in this country was Dustin Lee Honken. Mr. Honken was executed on July 17, 2020— one week prior to this brief's filing. As explained in greater detail below, Mr. Honken was allowed to have a Catholic priest, who is not employed by the Federal Bureau of Prisons, present in the execution chamber during his execution.

## II. The policies of other jurisdictions regarding access to chaplains before an execution and in the execution chamber

As was the case of Defendants' execution protocol prior to its April 2, 2019 amendment, the protocols of other jurisdictions are often unclear as to whether a spiritual advisor will be permitted to remain in the chamber during an execution. The Code of Federal Regulations

---

[2] Jennifer Lee Preyss, *Former death row minister reflects on service*, Victoria Advocate (Feb. 2, 2018), *available at* https://www.victoriaadvocate.com/news/features/faith/former-death-row-minister-reflects-on-service/article_d95b12f6-a77a-5f5f-a68b-72c6a76cc66c.html.

6

contains the protocol for executions conducted by the federal government. While the regulations state one spiritual advisor of the inmate's choosing will be permitted to "be present at the execution," the regulations do not make clear whether the spiritual advisor is permitted to be present in the chamber itself. *See* 28 C.F.R. § 26.4(c)(3). Even so, despite the fact the issue is not made entirely clear in the regulations themselves, recent practice does make clear that the policy allows spiritual advisors to remain in the execution chamber during an execution carried out by the federal government.

Specifically, three of the six executions conducted by the federal government during the post-*Furman* error have occurred within the ten days preceding this brief's filing: Daniel Lewis Lee was executed on July 14, 2020; Wesley Ira Purkey was executed on July 16; and Dustin Lee Honken was executed on July 17. While Counsel is not aware of whether Mr. Lee requested a spiritual advisor be present with him in the execution chamber, such a request was made Purkey and Honken. And indeed, ostensibly because of that request, chaplains were present in the execution chamber during the executions of both Purkey and Honken. Exhibit A (Amended Memorandum for Dustin Honken); Vic

7

Ryckaert, Elizabeth DePompei, & Justin L. Mack, *Wesley Ira Purkey executed in Terre Haute, 2nd man put to death this week*, IndyStar (July 16, 2020).[3] (Counsel is not aware whether the chaplain who accompanied Purkey during his execution is employed by the Federal Bureau of Prisons;[4] counsel is aware that Fr. Mark O'Keefe, who accompanied Honken during his execution, is not employed by the BOP. Mem. in Support of the Mtn. of Father Mark O'Keefe to Intervene as Pl. at 3, *Hartkemeyer v. Barr*, No. 2:20-CV-00336-JMS-MJD (S.D. Ind. July 7, 2020).)

Just as the federal regulations are not entirely perspicuous on the permissibility of having clerical figures in the execution chamber, state execution protocols are similarly lacking in precision or specificity. Nevertheless, what is entirely clear is that many of the states that currently execute prisoners give the condemned inmate greater access

---

[3] This article is available at https://www.indystar.com/story/news/crime/2020/07/16/wesley-purkey-executed-terre-haute/5442505002/.

[4] Dale Hartkemeyer, also known as Seigen, is a Buddhist priest who is not employed by the BOP and is the person Purkey had sought to have present during his execution. Counsel is not aware of whether Seigen, who feared his being present at Purkey's execution would expose him to Covid-19, was present during the execution. It is possible a BOP-employed chaplain served in that capacity during Purkey's execution.

to his spiritual advisor during the moments before he is executed than does Texas. After Texas, the state that has executed the most prisoners during the modern era is Virginia. Though not made clear from the state's execution protocol, Counsel has been informed that spiritual advisors have been permitted to walk an inmate into the execution chamber in Virginia before being escorted to the viewing area.[5] Counsel has also been informed spiritual advisors are allowed to accompany inmates to the chamber door in Idaho.[6] An article published in 1999 indicates that, at that time, the following states allowed condemned inmates to visit with their spiritual advisors until they were escorted to the execution chamber: Alabama, Arkansas, Idaho, Kentucky, Louisiana, Montana, Nebraska, New Jersey, New Mexico, New York,[7] Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Utah, and

---

[5] If the Court so desires, Counsel can provide it with a copy of Virginia's protocol (which is unclear) as well as an email from Elizabeth Peiffer, a staff attorney for the Virginia Capital Representation Resource Center, in which Ms. Peiffer informed Counsel of Virginia's practice.

[6] As is true for Virginia, this is not clear from Idaho's protocol. If the Court so desires, Counsel can provide it with a copy of Idaho's protocol as well as an email from Jonah Horwitz, Assistant Federal Defender, that makes clear the spiritual advisor for the last client of his who was executed was allowed to visit him until he was taken to the execution chamber.

[7] New York no longer executes inmates.

Virginia. *See* James R. Acker et al., *A Glimmer of Light in the Shadows of Death: Condemned Prisoners' Access to Spiritual Advisors—An Assessment of Policies and Practices*, 2 Contemp. Just. Rev. 235, 249-53 (1999).

In short, the policy in virtually all death penalty jurisdictions, including the federal policy, is that spiritual advisors are allowed to remain with the inmate up until the very moment the inmate is marched into the execution chamber; and in at least some jurisdictions, including the federal government, the advisor may remain with the condemned during the execution itself. Finally, it warrants emphasis that the State of Texas itself was representative of this overwhelming consensus and allowed a pastoral presence in the execution chamber itself from the time the death penalty returned to Texas in 1982, through March 2019, when Mr. Murphy requested that a Buddhist pastor, rather than a Christian, be the spiritual advisor permitted to stand by the condemned.

### III. The training or experience a spiritual advisor should have before being allowed to in the execution chamber

Throughout this litigation, Defendants have stressed that the security training given to TDCJ-employed chaplains, which is the same

training given to all new hires before they begin service to TDCJ, is necessary to prepare someone to be present in the execution chamber during an execution. The record suggests, however, that the Defendants' invocation of a security rationale is entirely pretextual, for this supposedly critical training does not provide any instruction related to executions. ECF No. 38-6 (Testimony of Chaplain Brouwer) at 9-10.[8]

In any event, to the extent Christian chaplains permitted by TDCJ to accompany the condemned during the execution receive special training, Counsel agree the same training should be offered to non-Christian spiritual advisors; and Counsel for Murphy specifically acknowledge and agree that Mr. Murphy's spiritual advisor, Rev. Shih, should complete whatever training other TDCJ chaplains receive before

---

[8] Counsel deposed an anonymous security officer on March 5. While Counsel for Defendants did not request an opportunity to have the officer review the deposition pursuant to FRCP 30(e)(1), undersigned Counsel is giving the officer an opportunity to review the deposition and forwarded a copy of it to Counsel for Defendants on July 19. Counsel for Defendants has yet to inform undersigned Counsel whether the officer believes it contains any inaccuracies. If the Court should so desire and would permit Counsel to file it under seal (because it is covered by a protective order), Counsel could file the transcript from this deposition. The transcript makes clear that the preservice training does not include training for execution. That training is done on-the-job.

As for federal executions, Counsel is not aware of what training, if any, Fr. O'Keefe received prior to his being permitted to be present in the execution chamber during Honken's execution.

being present to minister to the condemned inside the chamber during the execution.

Respectfully submitted,

| /s/ David R. Dow | /s/ Jeffrey R. Newberry |
|---|---|
| David R. Dow | Jeffrey R. Newberry |
| Texas Bar No. 06064900 | Texas Bar No. 24060966 |
| University of Houston Law Center | University of Houston Law Center |
| 4604 Calhoun Rd. | 4604 Calhoun Rd. |
| Houston, Texas 77204-6060 | Houston, Texas 77204-6060 |
| Tel. (713) 743-2171 | Tel. (713) 743-6843 |
| Fax (713) 743-2131 | Fax (713) 743-2131 |

*Counsel for Patrick Henry Murphy, Plaintiff*

## Certificate of Service

I certify that on July 24, 2020, I electronically filed the foregoing pleading using the electronic case-filing system of the Court. A notice of electronic filing was sent to:

Leah O'Leary
Amy Prasad
Office of the Attorney General
P.O. Box 12548 7th Fl.
William P. Clements Building
Austin, Texas 78711-2548
Tel. 512-463-2080

s/ Jeffrey R. Newberry
_____
Jeffrey R. Newberry